UNITED STATES *v.* SANCHE and others.

*(Circuit Court, W. D. Tennessee.* June 22, 1881.)

1. CRIMINAL LAW—CONSPIRACY TO COMMIT AN OFFENCE AGAINST THE UNITED STATES—REV. ST. § 5440—WRECKS, PLUNDERING OR STEALING FROM—REV. ST. § 5358.

The Revised Statutes, § 5440, make any conspiracy to commit an act declared by any law of the United States to be a crime, an offence against the United States, and do not restrict it to such acts as injure the United States. It applies as well to all conspiracies that affect private rights or interests, where they are under the protection of the criminal laws of the United States, as to the rights and interests of the government itself. *Held, therefore,* that a conspiracy to plunder a wrecked vessel within the admiralty and maritime jurisdiction of the United States is an offence against the United States within the meaning of that section, that act being a crime within Revised Statutes, § 5358.

2. SAME SUBJECT—DOING AN ACT TO EFFECT THE OBJECT OF THE CONSPIRACY—SUFFICIENCY OF INDICTMENT.

An indictment that avers in any form of language that some act has been done to carry out the agreement is sufficient, whether it appears from the face of the pleading that the act averred would tend to effect the object or not, that being a matter of proof and a question for the jury. *Held, therefore,* that an averment that one of the alleged conspirators "furnished and loaned" a skiff to be used by the others in plundering a wrecked vessel, was within the statute and sufficient as a pleading.

Motion to Quash.

The indictment alleges that the defendants—

"Did conspire, combine, confederate, and agree together, between and among themselves, to plunder certain goods and merchandise, a more particular description of which said goods and merchandise being to the grand jurors aforesaid unknown, then and there belonging to the steam-boat City of Vicksburg, the said steam-boat being then and there wrecked and in distress on the waters of the Mississippi river, within the admiralty and maritime jurisdiction of the United States, while engaged in commerce and navigation on the said river, to-wit, between Vicksburg, in the state of Mississippi, and St. Louis, in the state of Missouri; and that, to effect the object of the said conspiracy the said Hercules Sancho then and there furnished and loaned to the said John Woods and Elias Boatright a certain skiff to be used by them, the said Woods and the said Boatright, in plundering said goods and merchandise from the said steamboat."

The defendants moved to quash the indictment on the grounds stated in the opinion of the court.

*W. W. Murray,* Dist. Att'y, and *John B. Clough,* Asst. Dist. Att'y, for the United States.

*Metcalf & Walker, Luke E. Wright,* and *W. D. Wilkerson,* for defendants.

HAMMOND, D. J.    This is an indictment under Rev. St. § 5440, for a conspiracy to commit the offence denounced by Rev. St. § 5358, and the defendants move to quash it on two grounds.    The first is that section 5440 does not make it indictable to conspire to commit a trespass against private persons or private property, although such trespass may be a violation of the criminal laws of the United States, but only punishes frauds against the government of the United States, and such offences as are aimed at it by obstructing its operations or otherwise injuring it in its property or other rights. The section reads as follows:

"If two or more persons conspire, either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty," etc.

It is argued that the words "or to defraud the United States in any manner, or for any purpose," found in this section, indicate what is meant by "any offence against the United

States," as used in the preceding member of the same sentence; that this whole section was originally a part of a *revenue* law, and has been held to be still a crime against the *revenue* laws, although displaced by the Revision and put under the title "Crimes;" that as originally enacted the phrase "to commit any offence against *the laws* of the United States," has here been significantly changed; and that all the cases cited in the marginal notes to the second edition of the Revised Statutes are cases of the character designated in this objection to the indictment.

It is to be observed that the act of March 2, 1867, *c.* 169, is entitled "An act to amend existing laws relating to internal revenue, *and for other purposes.*" The other purposes seem to be important amendments to the criminal laws of the United States in no way especially connected with the revenue laws, that I can see, except that they are made by a single section in this act, all the other sections of which do indeed pertain to the revenue. This incongruity is not anomalous in our legislation, where most important subjects are disposed of in appropriation and other bills not at all germane to those subjects. That this section is of that character is plainly shown by another branch of it that makes an offence begun in one district and completed in another, triable in either. Act March 2, 1867, *c.* 169, § 30; 14 St. 484; Id. 471. These provisions are undoubtedly useful in the administration of the revenue laws, but they are likewise necessary in any other branch of our criminal jurisprudence; and the mere fact that they are found in a revenue law under a title like this, with the legislative habit that I have mentioned, furnishes but slight, if any, indication of an intention to limit their operation, as suggested by the argument we are considering. I think this section 30 of the act of 1867 finds its proper place in the Revised Statutes, where it has been separated and codified at sections 731 and 5440, and that it was intended originally to incorporate into our laws a statute found in England and many of the states, and which has its root in the common law itself. Its object is

to make it a crime to conspire to commit a crime, although the conspiracy be not fully consummated. In regard to the change of phraseology, it seems to me unimportant, and that the two phrases are synonymous. The revisers had no power to alter the law, while they might change the mere forms of expression; and unless something were shown that would demonstrate that congress, in enacting the Revision, intended to alter the law by amending the phraseology, the proper rule of construction is to treat the language of the Revision as synonymous to that of the original act, where the words are so much alike as they are here.

The case of *U. S.* v. *Fehrenbach*, 2 Woods, 175, is not opposed to this construction. Under the rule prescribed in section 5600 of the Revised Satutes, it relegates section 5440 to its original place in the revenue act of 1867, and applies to a conspiracy to commit an offence against the revenue laws the same term of limitations that section 1046 of the Revised Statutes provides for all "crimes arising under the revenue laws." In other words, the case decides that a conspiracy to defraud the revenue is a crime arising under the revenue laws, in the purview of section 1046. But this does not involve a limitation of the scope of section 5440, either to conspiracies to commit frauds on the revenue, or to conspiracies injuring the United States as a government. A conspiracy to defraud the revenue would probably be held to be "a crime arising under the revenue laws," within the meaning of section 1046, whether found denounced in a revenue law, or elsewhere in the criminal code, more especially if the conspiracy charged were one to commit an act itself made a crime. It is not the place where found in the statutes that impresses the crime with the characteristic of "arising under the revenue laws," but the fact that it is an offence against the *revenue*, and is so declared to be either expressly, or by necessary implication. I am of opinion, therefore, that we cannot, on the principle of that case, be required to restrict section 5440 to such "offences" as operate to injure the government itself, but that it covers every

conspiracy to commit an act made an "offence" or crime by any law of the United States, as well as an act that may defraud the United States in any manner whatever. The sections collated in the index of the Revised Statutes, under the title "Conspiracy," show that this is only one of many sections enacted—in the language of the learned judge in *U. S. v. Sacia*, 2 FED. REP. 754—"to meet the party to the fraud on the very threshold of the perpetration of his crime, and to render him liable to its penalties before the consummation of the fraud." This was said of this statute in its application to a fraud against the government, but is equally applicable to all cases; and other sections, where special legislation seemed necessary, make it manifest that congress protects the rights and interests of the citizen as sedulously as it does those of the government, by punishing conspiracies to commit crimes within the jurisdiction of the United States.

Another objection urged to this indictment is that it does not allege any act of any one of the alleged conspirators to effect the object of the conspiracy. As I understand the objection, it is that the pleading should have alleged that the skiff was actually delivered to the parties mentioned for the purpose charged. It is said that only a verbal act is averred by the word "loaned," which is not sufficient to meet the statute. In *U. S. v. Donau*, 11 Blatchf. 168, it is said that—

" The act which the statute calls for is not designated as an overt act, and was not intended to be made an element proper of the offence. The offence is the conspiracy. Some act by some of the conspirators is required to show, not the unlawful agreement, but that the unlawful agreement, while subsisting, became operative. * * * If, then, an indictment correctly charges an unlawful combination and agreement as actually made, and, in addition, describes any act by any one of the parties to the unlawful agreement as an act intended to be relied on to show the agreement in operation, it is sufficient, although upon the face of the indictment it does not appear in what manner the act described would tend to effect the object of the conspiracy. It is sufficient if the act be so described as to apprise the defendant what act is intended to be given in evidence as tending to show that the unlawful agreement was put in operation, without its being made to appear to the court, upon the face of the indictment, that the act mentioned is necessarily calculated to effect the object of the unlawful combination charged."

In *U. S.* v. *Boyden*, 1 Low. 266, 268, it is said:

"The acts set out are no part of the offence and may in themselves be innocent. The purpose of the law is that a mere agreement, however corrupt, shall not be punished as a crime, unless it has led to some overt act; and any form of language which shows that such an act has been done to carry out the agreement is sufficient."

The learned counsel for the defendants read this indictment as if it averred that the defendant named *agreed* to furnish and lend to the other parties this skiff for the unlawful purpose named. And if this were a correct rendering of the language it would not comply with this statute as interpreted by these authorities; but the language is "furnished and loaned," which necessarily implies, I think, the act of putting the skiff within their control and answers the statute. Whether the act was one tending to· effect the object of the conspiracy is a question for the jury on the proof, but certainly the pleading is sufficient.

Overrule the motion.