294 S.E.2d 62

**STATE of West Virginia**

v.

**Eugene LESS.**

**No. 14956.**

Supreme Court of Appeals of West Virginia.

July 29, 1981.

Concurring Opinion June 28, 1982.

---

no lesser relief exists "that would give effect to and maintain respect for the statute." 164 W.Va. at 466, 265 S.E.2d at 533.

Harshbarger, C. J., concurred with opinion in which McGraw, J., joined.

Ross Maruka and C. Patrick Carrick, Fairmont, for appellant.

Chauncey H. Browning, Atty. Gen. and Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

The appellant, Eugene Less, was convicted of the crime of conspiracy to commit robbery. The case is before this Court on an appeal from a final order of the Circuit Court of Marion County sentencing the appellant to not less than one nor more than five years in the West Virginia Penitentiary, and denying his motion to set aside the verdict and award him a new trial. On this

appeal the appellant assigns the following grounds as error: (1) the indictment charging conspiracy to commit robbery does not state an offense under *W. Va. Code*, 61–10–31(1); (2) *W. Va. Code*, 61–10–31(1) is unconstitutionally vague; (3) the evidence at trial was insufficient to support the jury's verdict of guilt; (4) the trial judge was biased against the appellant; (5) the trial judge's denial of the appellant's request for a private investigator to assist in the preparation of his defense; and (6) the trial judge's giving of two instructions offered by the State and refusal to give an instruction offered by the appellant.

I

The appellant, Eugene Less, was indicted, along with Twila Harris, Chris Sawitski, Jeffrey Sawitski, and Lisa Yost, by the November, 1978, Marion County Grand Jury. The indictment charged that the defendant "did unlawfully and feloniously conspire to commit an offense against the State of West Virginia, to-wit; the crime of robbery...." *W. Va. Code*, 61–10–31(1), provides, in pertinent part: "It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State ... if ... one or more of such persons does any act to effect the object of the conspiracy...."

The appellant urges us to find that the indictment in this case does not state an offense under *W. Va. Code*, 61–10–31(1), because that section only prohibits "conspiracies directed against the State." In construing the phrase "any offense against the State" the appellant would have us distinguish between crimes, such as treason, "official bribery," and election fraud, which are "directed against the government of the State," and crimes, such as robbery, which are merely "directed solely against the person." The State argues, on the other hand, that *W. Va. Code*, 61–10–31(1), uses the phrase "any offense against the State" as a generic term denominating both felonies and misdemeanors. We think that a proper interpretation of *W. Va. Code*, 61–10–31(1), requires that we reject the distinction urged by the appellant and agree with the State on this issue.

*W. Va. Code*, 61–10–31, was enacted by the Legislature in 1971.[1] 1971 *W. Va. Acts* ch. 45. The language of this section is almost identical to that of the federal conspiracy statute which provides, in pertinent part: "If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined ... or imprisoned...." 18 U.S.C. § 371. The only substantive difference between the federal

---

1. *W. Va. Code*, 61–10–31, as passed by the Legislature, in 1971, provided in full:

It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

Nothing in this section shall be construed to supersede, limit, repeal or affect the provisions of section eight [§ 3–9–8], article nine, chapter three; section two [§ 5–1–2], article one, chapter five; section thirty-eight [§ 5A–3–38], article three, chapter five-A; section seven [§ 20–7–7], article seven, chapter twenty; section sixteen [§ 60–6–16], article six, chapter sixty; sections seven, eight, nine and ten [§ 61–6–7 to 61–6–10], article six, chapter sixty-one; or section one [§ 62–8–1], article eight, chapter sixty-two; all of this Code. It shall not be a defense to any prosecution under this section thirty-one that the conduct charged or proven is also a crime under any

other provision or provisions of this Code or the common law.

Any person who violates the provisions of this section by conspiring to commit an offense against the State which is a felony, or by conspiring to defraud the State, the state or any county board of education, or any county or municipality of the State, shall be guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years or by a fine of not more than ten thousand dollars, or, in the discretion of the court, by both such imprisonment and fine. Any person who violates the provisions of this section by conspiring to commit an offense against the State which is a misdemeanor shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by confinement in the county jail for not more than one year or by a fine of not more than one thousand dollars, or, in the discretion of the court, by both such confinement and fine.

provision and the provision in our Code is the denomination of the sovereign against which the offense is committed. Interpretations given 18 U.S.C. § 371 by federal courts are, therefore, a relevant consideration in interpreting our State version of that statute. *State ex rel. Knight v. Public Service Commission*, 161 W.Va. 447, 245 S.E.2d 144 (1978).

Federal courts have long held that the term "any offense against the United States" in 18 U.S.C. § 371 means the commission of any act made an offense by the laws of the United States, regardless of whether that act is directed at the government itself or a private individual. *See, e.g., United States v. Lyman*, 190 F. 414 (D.Or.1911); *Radin v. United States*, 189 F. 568 (2nd Cir. 1911), *cert. denied*, 220 U.S. 623, 31 S.Ct. 724, 55 L.Ed. 614 (1912); *United States v. Thomas*, 145 F. 74 (W.D. Mo.1906); *United States v. Sanche*, 7 F. 715 (W.D.Tenn.1881). Indeed, as late as 1975, the United States Supreme Court has referred to 18 U.S.C. § 371 as the "general conspiracy statute." *United States v. Feola*, 420 U.S. 671, 687, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975).

South Dakota also has a general conspiracy statute modeled after 18 U.S.C. § 371. The South Dakota statute provides, in pertinent part: "If two or more persons conspire ... to commit any offense against the state of South Dakota ... and one or more of the parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be guilty...." *S.D. Compiled Laws Ann.* § 22-3-8. In *State v. Henglefelt*, 72 S.D. 306, 33 N.W.2d 492 (1948), the South Dakota Supreme Court rejected the same argument that the appellant makes in the case presently before us: "It appears manifest that ... it is an offense against the State of South Dakota to do that which is declared by the law of the state to be prohibited and criminal."

■ We hold that *W.Va.Code*, 61–10–31(1), is a general conspiracy statute and

the agreement to commit any act which is made a felony or misdemeanor by the law of this State is a conspiracy to commit an "offense against the State" as that term is used in the statute. Robbery is a common law felony for which punishment is provided by *W.Va.Code*, 61-2-12. *State ex rel. Vandal v. Adams*, 145 W.Va. 566, 115 S.E.2d 489 (1960); *State v. McCoy*, 63 W.Va. 69, 59 S.E. 758 (1907). The indictment in this case, therefore, properly charged the appellant with the crime of conspiracy to commit robbery under *W.Va. Code*, 61–10–31(1).[2]

## II

■ The appellant argues that *W.Va. Code*, 61–10–31(1), is not set out with sufficient clarity to give a person of reasonable intelligence fair notice that his contemplated conduct is prohibited and that the statute is, therefore, unconstitutionally vague. The vagueness standard is well settled:

A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.

Syl. pt. 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974). *See also State v. Reed*, 166 W.Va. 558, 276 S.E.2d 313 (1981).

The constitutionality of *W.Va.Code*, 61–10–31, was considered by this Court in *State ex rel. Whitman v. Fox*, 160 W.Va. 633, 236 S.E.2d 565 (1977). In that case the appellants had been indicted under *W.Va. Code*, 61–10–31(2), for conspiring to defraud Logan County by depriving the county of its right to the honest performance of its commissioners of election. We granted a writ of prohibition to consider, among other things, a vagueness challenge to *W.Va.Code*, 61–10–31. In striking down the second clause of that statute, but upholding the first, we said:

---

**2.** *See also State v. Fitch*, 164 W.Va. 337, 263 S.E.2d 889 (1980), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346, 352 (1980) and *State v. Ellis*, 164 W.Va. 337, 239 S.E.2d 670 (1977) where this Court noted that *W.Va.Code*, 61–10–31(1), could be used to indict for conspiracy to commit grand larceny and conspiracy to deliver a controlled substance.

[T]he crime denominated as '(2) to defraud the State, the state or any county board of education, or any county or municipality of the State, . . .' is void for vagueness because it does not adequately inform the citzenry of the activity which may be considered criminal under the statute. This part of the statute sets forth the law in language which no man can understand. The same deficiency, however, does not apply to the provision which makes it unlawful for two or more persons to conspire '(1) to commit any offense against the State . . .' because the specific offenses are defined by statutory or common law. . . .

Accordingly we hold that all provisions of *W.Va.Code*, 61–10–31 [1971] referring to conspiracies 'to defraud the State . . .' are unconstitutionally vague; however, under the doctrine of the least obtrusive remedy we see no need to strike down the entire statute when the constitutionally offensive part of it is severable. . . . Therefore, so much of the statute as concerns conspiracy to commit offenses against the State is valid and in continued force and effect.

236 S.E.2d at 569, 571.

■ The terms of *W.Va.Code*, 61–10–31(1), are clear and unambiguous on their face and are of sufficient definiteness to give a person of ordinary intelligence fair notice that agreeing to commit an act made a felony or misdemeanor by the law of this State is prohibited. The specific offenses are set forth with sufficient definiteness by either statute or common law.

## III

The appellant's next assigned error is that the evidence produced by the State at trial is insufficient to sustain the verdict of guilty returned by the jury. The appellant argues that the evidence below merely showed that he was present with the co-conspirators before, during and after the robbery, but was insufficient to show that he participated in the planning, preparation or commission of the robbery. The appellant also argues that the evidence does not support a finding that the "appellant entered into an agreement to conspire to commit the subject robbery." The State argues that there was enough evidence in the record to support the jury's conclusion that there was a conspiracy and that the appellant was a member of the conspiracy.

The State must prove all the elements of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Pinkerton v. Farr*, 159 W.Va. 223, 220 S.E.2d 682 (1975). This Court last considered what constituted a common law conspiracy in *State v. Loveless*, 140 W.Va. 875, 87 S.E.2d 273 (1955). It is necessary to the consideration of this assignment of error to consider in more detail the elements necessary to the crime of conspiracy under *W.Va.Code*, 61–10–31(1).

■ In order for the State to prove conspiracy under *W.Va.Code*, 61–10–31(1), it must show that the defendant agreed [3] with others [4] to commit an offense against the State [5] and that some overt act was

---

**3.** Some commentators have raised the objection that conspiracy falls afoul of the traditional maxim that the law does not "punish an evil intent alone." Goldstein, "Conspiracy to Defraud the United States," 68 Yale L.J. 405, 406 (1959). The objection is without basis. "So long as [an unlawful] design rests in intention only, it is not indictable. When two agree to carry it into effect, the very plot is an act in itself. . . . The agreement is an advancement of the intention. . . ." *State v. Carbone*, 10 N.J. 329, 91 A.2d 571, 574 (1952). *See also Aikens v. Wisconsin*, 195 U.S. 194, 205, 25 S.Ct. 3, 5, 49 L.Ed. 154 (1904).

**4.** The statute specifically requires two or more persons to be involved, hence, the illegal agreement must be made with others. "It is impossible . . . for a man to conspire with himself." *Morrison v. California*, 291 U.S. 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664 (1934).

**5.** The statute specifically states that the object of the conspiracy must be "an offense against the State." *W.Va.Code*, 61–10–31. *See* section I of this opinion, *supra*. At common law a conspiracy could be an agreement "to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Commonwealth v. Hunt*, 45 Mass. (4 Metc.) 111, 123 (1842). *See also Pettibone v. United States*, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *State v. Loveless, supra*.

taken by a member of the conspiracy to effect the object of that conspiracy.[6] The statute does not require proof of an "agreement to conspire" to commit an offense. The State must rather prove an agreement to commit an "offense against the State." *W.Va.Code,* 61–10–31(1). A conspirator does not have to agree to conspire. The prohibited conduct is the agreement to commit an act made an offense by the laws of this State.

The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed. *United States v. Bayer,* 331 U.S. 532, 542 [67 S.Ct. 1394, 1399, 91 L.Ed. 1654] (1947). Criminal intent has crystallized, and the likelihood of actual, fulfilled commission warrants preventive action.

*United States v. Feola, supra,* 420 U.S. at 694, 95 S.Ct. at 1268.

■ The agreement to commit an offense is the essential element of the crime of conspiracy—it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement. *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *Interstate Circuit v. United States,* 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939); *State v. Wisman,* 94 W.Va. 224, 118 S.E. 139 (1923).

■ The purpose of the overt act requirement is merely to show "that the conspiracy is at work." *Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1957), quoting *Carlson v. United States,* 187 F.2d 366, 370 (10th Cir. 1951). It is not necessary that each conspirator involved in the conspiracy

commit his or her own overt act. The overt act triggering the conspiracy as to all the conspirators can be committed by any one of their number. *Bannon v. United States,* 156 U.S. 464, 15 S.Ct. 467, 39 L.Ed. 494 (1895); *United States v. Montgomery,* 440 F.2d 694 (9th Cir.), *cert. denied,* 404 U.S. 884, 92 S.Ct. 221, 30 L.Ed.2d 166 (1971). The substantive crime which is the object of the conspiracy can be proven as the overt act. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The standard on review of the sufficiency of the evidence in a criminal case is found in Syl. pt. 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In light of this standard the question here is whether the verdict should be set aside on the ground that it is contrary to the evidence that the appellant agreed to the commission of the robbery and that one or more persons with whom he agreed committed an act to effect the object of the conspiracy.

■ The evidence adduced at trial showed that, on the evening of December 4, 1978, the appellant, Eugene Less, along with Twila Harris, Lisa Yost and Jeffery Sawitski were at the Palace Pool Hall in Fairmont, West Virginia, shooting pool and drinking beer when they ran low on money. Ms. Yost and the appellant were sitting together at the bar late in the evening

---

**6.** At common law there was no overt act requirement. The offense of conspiracy related alone to the agreement. The modern statutory trend is to require an overt act to show that the conspiracy is at work. *See, e.g.,* 18 U.S.C. § 371; *Colo.Rev.Stat.* § 18–2–201. *Cf. Ariz.Rev.Stat. Ann.* § 13–1003.

when Ms. Harris approached them and suggested that they commit a robbery to obtain money so as to continue the evening's activities.

The four conspirators soon left the pool hall and went to Ms. Harris' residence. Ms. Yost suggested to Ms. Harris that they change clothes so as to disguise their appearance. The testimony indicated that the appellant was present in the bedroom during this conversation and the clothes change.

After being joined by Chris Sawitski, they then went by car to the Kompak store in Fairmont. Ms. Harris and Ms. Yost entered the store and robbed it. While the robbery was occurring, the appellant remained in the car with Chris and Jeffery Sawitski. The appellant discussed the robbery at this point with the Sawitskis. The women were soon back in the car and the appellant asked how much the robbery had netted.

The group fled in the direction of Monongah, West Virginia. On the way to Monongah, the car they were in went off the road and into a ditch. The appellant helped push it out. Upon arrival in Monongah, the group went to the B & L Bar where the money was divided. The appellant received $20.00 which he spent at the B & L on beer and pool.

On this evidence there is no doubt that the State proved the existence of a conspiracy and the commission of one or more overt acts by a member or members of the conspiracy in furtherance of the aim of the conspiracy. We also think that there was evidence upon which the jury could have concluded that the appellant had agreed to the commission of the offense. He was present at all stages of the planning, preparation and execution of the robbery. He discussed the robbery and the amount of money taken before and after the commission of the robbery. He actively assisted the group in fleeing from the scene. He willingly shared in the ill-gotten gains. His actions in spending the money as planned, i.e., to continue the evening's entertainment of drinking and shooting pool, also support the jury's conclusion that the appellant had agreed to the commission of the robbery.

## IV

The appellant assigns as error certain actions taken by the trial judge during the course of the trial. He argues that numerous statements, actions and failures to act by the trial judge show that the judge was biased toward him.

In *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979), we held, at Syl. pt. 4:

A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. . . ."

In that case, however, we also noted that: "Ordinarily, without objection we will not consider such matters on appeal." 163 W.Va. at 58, 254 S.E.2d at 140.

Of the instances allegedly showing bias on the part of the trial judge toward the appellant, the appellant objected only to the trial judge amending one of the jury instructions. In that instance the trial judge amended a State's instruction because he believed it was not a correct statement of the law as offered. We find no merit in the appellant's argument. We have examined the entire record carefully and in detail on this issue. We think that the trial judge in this case performed his duties in an impartial manner. There is absolutely no indication of bias or prejudice.

## V.

The appellant assigns as error the trial judge's refusal to permit him to hire a private investigator to assist him in this case. He relies on *W.Va.Code*, 51–11–8, which provides, in pertinent part:

In each case in which an attorney is assigned under the provisions of this article to perform legal services for a needy person, he shall be compensated for actual and necessary services rendered at the rate of twenty dollars per hour for work performed out of court, and at the rate of twenty-five dollars per

hour for work performed in court, but the compensation for services shall not exceed one thousand dollars. Expenses of the attorney in rendering such services, including, but not limited to, necessary expenses for travel, transcripts, investigative services and expert witnesses, shall be reimbursed to a maximum of five hundred dollars, unless the attorney, for good cause shown to the court, shall have received advance approval to incur expenses for a larger sum.

■ On this appeal the appellant argues that the above quoted statute creates an absolute duty on the part of the trial judge to appoint an investigator when the defense attorney, in his discretion, decides that he wants one. In essence, he argues that the discretion to appoint an investigator is the defense counsel's and not the judge's. We disagree. The statute provides for reimbursement for "necessary expenses." It is a matter within the sound discretion of the trial judge whether investigative services are necessary under *W.Va.Code,* 51–11–8, and the exercise of such discretion will not constitute reversible error unless the trial judge abuses such discretion. *See State ex rel. Leach v. Hamilton,* 167 W.Va. 228, 279 S.E.2d 420 (1981); *State ex rel. Foster v. Luff,* 164 W.Va. 413, 264 S.E.2d 477 (1980). The record indicates that the trial judge's refusal to appoint an investigator in this case was not an abuse of his discretion.

## VI.

■ The appellant assigns error in regard to three of the jury instructions in this case. The trial judge gave the following instruction: "The Court instructs the jury that the jury may infer that a person intends to do that which he does, or which is the natural or necessary consequence of his act." This Court specifically upheld this instruction in *State v. Wright,* 162 W.Va. 332, 249 S.E.2d 519 (1978). Where the jury is permitted, but not required, to infer from the evidence that the defendant had the intent necessary for conspiracy to commit an offense against the State, and the jury is properly and adequately advised of the State's duty to prove that intent beyond a reasonable doubt, the giving of the instruction "that the jury may infer that a person intends to do that which he does, or which is the natural or necessary consequence of his act," is not error.

■ The appellant also assigns as error the giving of the following instruction:

The Court instructs the jury that a person cannot voluntarily make himself drunk, intending to commit a crime, then claim immunity from punishment because of his condition when he committed the crime, the law not permitting a man to avail himself of the excuse of his own vice as a shelter from the legal consequences of such crime.

It was not error for the trial judge in this case to give an instruction that correctly incorporates the law that a "person ... cannot voluntarily make himself so drunk as to become on that account irresponsible for his conduct during such drunkenness." Syl. pt. 5, *State v. Robinson,* 20 W.Va. 713 (1882). *See also State v. Brant,* 162 W.Va. 762, 252 S.E.2d 901 (1979); *State v. Bailey,* 159 W.Va. 167, 220 S.E.2d 432 (1975), *overruled on other grounds, State ex rel. D. D. H. v. Dostert,* 165 W.Va. 448, 269 S.E.2d 401 (1980).

■ The appellant also assigns as error the trial judge's refusal to give a certain instruction relating to the elements of the crime of conspiracy. We have examined all of the instructions offered and given in this case and find that the instruction not given, which the appellant assigns as error, was repetitious of instructions which were given. "Instructions that are repetitious ... should not be given to the jury by the trial court." Syl. pt. 7, *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976).

For the above stated reasons, the order of the Circuit Court of Marion County, which sentenced the appellant, Eugene Less, to not less than one nor more than five years in the West Virginia Penitentiary, and denied his motion for a new trial, is affirmed.

Affirmed.

**268**

HARSHBARGER, Justice, concurring:

I am reluctant to agree with Syllabus Point 4 and other parts of the opinion that might be used in the future as authority for allowing perpetrators of crimes to involve others in their misdeeds, as conspirators, when those others were not proved to have performed any act furthering the main crime.

The saving grace here is that there was proof that this conspirator did, in fact, assist in the "get-away" and did share in the proceeds of the robbery.

But we must be always alert to conspiracy dangers. Writing in a different fact situation, this Court through Justice Neely in *State ex rel. Whitman v. Fox*, 160 W.Va. 633 at 639, 236 S.E.2d 565, at 570, said:

> "If we upheld the part of the conspiracy statute under consideration, we would be accessories to the creation of a vehicle for great prosecutorial mischief."

What we are saying, simply, is that the dangers of conspiracy prosecutions are that they can become tools for abuse, and are to be watched with intensity.

I am authorized to say that Justice McGRAW joins me in this concurrence.