# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0117** (Webster County 16-F-9)

**Rodney A. Carpenter,**
**Defendant Below, Petitioner**

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Rodney A. Carpenter, by counsel Daniel R. Grindo, appeals the Circuit Court of Webster County's January 3, 2017, order denying his post-trial motion for judgment of acquittal and sentencing him following his convictions for operating or attempting to operate a clandestine drug laboratory and conspiracy. Respondent State of West Virginia, by counsel Robert L. Hogan, filed a response. On appeal, petitioner contends that the circuit court erred in denying his motion for judgment of acquittal because there was insufficient evidence to sustain his convictions.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 12, 2016, petitioner was indicted on one count of operating or attempting to operate a clandestine drug laboratory and one count of conspiracy. The indictment also charged Virginia Lee Davis, Billy W. Green, and Allen R. Garner Jr. with these same crimes. Mr. Green, who is Ms. Davis's son, entered into a plea agreement with the State prior to trial. The charges against petitioner, Ms. Davis, and Mr. Garner proceeded to a jury trial on September 14, 2016. The evidence at trial showed that, on August 6, 2015, Deputies Vandevender and Cogar of the Webster County Sheriff's Department were dispatched to Ms. Davis's home following a report that petitioner was "there screaming and yelling at next-door neighbors [and] passing cars[.]" When Deputy Vandevender arrived at Ms. Davis's residence, Ms. Davis, who was on the porch, stepped inside the home and then back outside. Deputy Vandevender asked her where petitioner was, and petitioner came to the front door. As Deputy Vandevender was walking toward the porch and petitioner was exiting the front door, Deputy Vandevender noted a chemical odor consistent with the operation of a methamphetamine laboratory, specifically, that of Coleman fuel, and he saw a bottle being thrown "off the back porch, and [it] flew across and hit the outbuilding [beside the house]." Deputy Vandevender observed liquid coming out of the bottle, and, once he got closer to it, noticed a white, granular substance in it. At this point, additional

1

law enforcement was called to the scene, including Trooper Baier and Trooper Hebb of the West Virginia State Police. Trooper Baier obtained consent from Ms. Davis to search her property.

During the search of Ms. Davis's home and property, the officers obtained and photographed additional evidence. The photographs, which were shown to the jury, depicted a partially-burned Zephrin-D pack; lithium battery pack; a bottle cut in half with a still-wet filter in it; a bag with liquid in it; tin foil, salt, and coffee filters on the kitchen countertop; pieces of ripped tin foil in a kitchen drawer; Liquid Fire; a metal "snort straw," which had been concealed over a doorway; a sweatshirt found in Mr. Green's room with a coffee filter in the front pocket; a gun rack from Mr. Green's room containing drug paraphernalia; a container from Ms. Davis's room containing lithium batteries; tubing from Ms. Davis's bedroom; Coleman fuel; and a filter commonly used in smoking devices. Deputy Vandevender testified that the items depicted in the photographs were commonly used for manufacturing, smoking, or snorting methamphetamine.

Rebecca Harrison, a forensic analyst in the drug identification section of the West Virginia State Police Forensic Laboratory, testified that the evidence obtained, based upon its condition, suggested that the methamphetamine-making process was "toward the end." Trooper E.E. Bostic, who is certified in sampling and testing methamphetamine labs, also testified that the condition of the evidence obtained suggested that the methamphetamine-making process was nearly complete.

Mr. Green testified at trial for the defense. Mr. Green claimed responsibility for the methamphetamine operation and attempted to exonerate his codefendants. Mr. Green testified that he was operating the methamphetamine laboratory outside, behind the house, alone when petitioner and another codefendant arrived at Ms. Davis's house. Mr. Green testified that petitioner was not near him while he was making methamphetamine.

Petitioner moved for a judgment of acquittal at the close of the State's case-in-chief and again at the conclusion of the trial. Both motions were denied, and the jury found petitioner and his codefendants guilty of operating or attempting to operate a clandestine drug laboratory and conspiracy. On November 3, 2016, petitioner moved to set aside the verdict arguing that there was insufficient evidence to convict him. On November 7, 2016, the parties appeared for a hearing on post-trial motions and sentencing. Upon finding that sufficient evidence was presented to convict petitioner, the circuit court denied petitioner's motion and sentenced him to not less than two nor more than ten years of incarceration for his operating or attempting to operate a clandestine drug laboratory conviction and not less than one nor more than five years of incarceration for his conspiracy conviction. These rulings were memorialized by an order entered on January 3, 2017. It is from this order that petitioner appeals.

On appeal, petitioner argues that the State failed to present any evidence to support his convictions other than petitioner's presence at the location of the methamphetamine laboratory, and that mere presence is insufficient to support a conviction. Petitioner argues that there was no indication that he lived at the residence at which the methamphetamine laboratory was found, nor was any connection made between petitioner and the evidence found at Ms. Davis's residence. Although certain of petitioner's codefendants had purchased pseudoephedrine, there was no evidence that petitioner had ever made such purchases. Petitioner also highlights Mr.

Green's testimony that Mr. Green had been making methamphetamine unbeknownst to petitioner, who had arrived unexpectedly during the manufacturing process. In sum, petitioner argues that, not only was there no evidence upon which a jury could find him guilty beyond a reasonable doubt, but the only evidence presented either could not be specifically linked to him or exonerated him.

This Court applies a de novo standard of review to appeals from rulings on a motion for judgment of acquittal:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). Regarding a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence from which the jury could find petitioner guilty of operating or attempting to operate a clandestine drug laboratory and conspiracy. We begin by noting that petitioner does not dispute that a methamphetamine laboratory was in operation on Ms. Davis's property while he

was there. Indeed, Mr. Green admitted to operating the methamphetamine laboratory at the home. Petitioner is also correct in arguing that

> [m]erely witnessing a crime, without intervention, does not make a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.

Syl. Pt. 9, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989) (internal quotations and citations omitted). But,

> [p]roof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime.

*Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 10. More particularly,

> [w]here a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principle in the second degree, or as a principal in the first degree in the commission of such offense.

*Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 8. "A person who is the absolute perpetrator of a crime is a principal in the first degree, and a person who is present, aiding and abetting the fact to be done, is a principal in the second degree." *Id.*, Syl. Pt. 5. To be convicted as a principle in the second degree, "the law requires that the accused 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* at 356, 387 S.E.2d at 823 (citation omitted). While the State must show that petitioner "shared the criminal intent of the principal in the first degree[, . . . ] the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Id.* (internal quotations and citations omitted). Further, "[u]nder the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator." *Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 11.

Bearing these principles in mind and crediting all inferences and credibility determinations that the jury might have drawn in favor of the prosecution, sufficient evidence exists to sustain petitioner's convictions. A reasonable juror could have concluded that the methamphetamine laboratory was being operated inside the house rather than outside, as Mr. Green testified. Items typically used in operating a methamphetamine laboratory were found on the kitchen countertop, and petitioner was also inside the house at the time law enforcement

arrived. Deputy Vandevender testified to smelling Coleman fuel, used in the manufacturing process, as he approached the front porch. Moreover, testimony was adduced that the manufacturing process was nearing completion at the time law enforcement arrived. The partially burned Zephrin-D packaging and battery packages, methamphetamine laboratory components hidden under the house, concealed snort straw, and other items strewn about could have led a reasonable juror to infer that multiple people, including petitioner, were hurriedly attempting to conceal their operation. Finally, credibility determinations are for a jury, and the jury in this instance found Mr. Green's attempts to exonerate his codefendants incredible. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Similarly, we find sufficient evidence to support petitioner's conspiracy to operate or attempt to operate a clandestine drug laboratory conviction. To prove a conspiracy, the State "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, in part, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981). Again, there is no dispute that a methamphetamine laboratory was in operation in petitioner's presence. Thus, petitioner's challenge focuses on the State's alleged failure to show "any particular agreement, plan etc. between the [p]etitioner and the co-defendants[.]"

> The agreement to commit an offense is the essential element of the crime of conspiracy – it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement.

*Id.* at 265, 294 S.E.2d at 67 (citation omitted). Based upon the evidence presented as outlined above, reasonable jurors could conclude that petitioner was among a group of individuals who intended to encourage the preparation of the methamphetamine to share in it upon its completion. As such, the circuit court did not abuse its discretion in denying petitioner's motion for judgment of acquittal.

For the foregoing reasons, the circuit court's January 3, 2017, order denying his post-trial motion for judgment of acquittal and sentencing him is hereby affirmed.

Affirmed.

**ISSUED**: January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker