**FILED**
**October 26, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0173** (Roane County CC-44-2018-F-115)

**Jamie Carson Hicks,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Jamie Carson Hicks, by counsel Marc A. Moore and David B. Richardson, appeals the Circuit Court of Roane County's February 2, 2021, order denying his motion for a new trial and sentencing him following his convictions for possession of counterfeit $100 bills with intent to utter, conspiracy to commit a felony of counterfeiting, and possession with intent to distribute methamphetamine.[1] Respondent State of West Virginia, by counsel Patrick Morrisey and Lara K. Bissett, filed a response and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in 1) allowing evidence of the sexual relationship between himself and his codefendant, and 2) denying his motion for judgment of acquittal, and subsequent motions for a new jury trial and a post-judgment verdict of acquittal.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 25, 2018, petitioner and a codefendant, Mr. Dillon Shumate, were indicted on one count of counterfeiting (Count 1); one count of conspiracy to commit a felony, to wit, counterfeiting (Count 2); and one count of possession with intent to deliver a controlled substance, to wit, methamphetamine (Count 3).

---

[1]Mr. Moore was appointed as petitioner's initial counsel and perfected the appeal. However, this Court later suspended Mr. Moore's license to practice law, and Mr. Richardson was appointed for purposes of appeal. Mr. Richardson filed petitioner's reply brief.

1

Petitioner's trial commenced in July of 2020. During its opening statement in the trial, the State informed the jury that Mr. Shumate "was in a relationship with [petitioner], that when they were in that romantic relationship together, [petitioner] would give him methamphetamine during those times." The State also told the jury that the petitioner was in a relationship with Ms. Misty Lloyd.

At the end of opening statements, petitioner's trial counsel told the circuit court:

> Your Honor, I would raise, after the presentation of the opening statements, there [i]s one issue that really does n[o]t hold any relevance to the matter here, and can be covered in a much better way, which is the romantic relationship between my client and Dillon Shumate.

> There [i]s very minimal information that was disclosed that provides any detail as to that, and I would ask that—there is a clip within a statement that can be understood that way, but to emphasize that as an important point, it could be prejudicial to my client and does n[o]t hold any probative value. So I would ask that be restricted within the State's presentation.

The State responded:

> Your Honor, I think it [i]s as relevant as whether he was in any form of relationship with Mr. Shumate or Ms. Lloyd, the significance, that puts them together often, and that [i]s the issue, and I believe that Mr. Shumate's—he's going to say, yes, they were in a romantic, sexual relationship, whatever the exact definition of it is, but that puts him with [petitioner] and creates the opportunity for [petitioner] to provide him things. I think what we [a]re going to run into is kind of a [sic] opposite argument that will be up to the jury to decide, that Mr. Moore brought up in his opening, did [petitioner] provide methamphetamine to Mr. Shumate, or did Mr. Shumate provide to [petitioner]? So, it [i]s not brought up to embarrass—it [i]s just to put up that these people are close, are together, no—the purpose is obvious, and I agree it [i]s not relevant, it [i]s just it puts them together.

The court replied:

> It is what it is, and we [a]re just going to have to deal with it. I [a]m not going to exclude that evidence, based on what I [ha]ve heard so far. You [a]re welcome to bring it up again if it comes up during testimony, but at this point, I do n[o]t see that there [i]s reason to exclude it. You may want to suggest some kind of cautionary instruction at the end that you might give to the jury. . . .

After opening statements, the State presented its witnesses. The State presented D'Nisha Hamblin, an employee of the West Virginia State Police Forensic Laboratory, who testified that her testing of the substances seized from petitioner's bedroom were found to be methamphetamine.

2

Next, Mr. Shumate testified that he had a substance abuse history with methamphetamine. Mr. Shumate, however, clarified that he was clean and sober as he testified at petitioner's trial. Mr. Shumate testified that he was in possession of and used counterfeit $100 bills at the local Walmart, and that he eventually entered into a plea agreement to conspiracy for using the counterfeit money. Mr. Shumate further testified as to his relationship with petitioner and Ms. Lloyd. Mr. Shumate explained that he was living at petitioner's residence during the Walmart counterfeiting incident. Mr. Shumate testified that when he stayed with petitioner, he "just chilled out in his room with him." Mr. Shumate described his relationship with petitioner "as like a close buddy." The State inquired if Mr. Shumate was in a relationship with petitioner. Mr. Shumate disclosed that he was in "[a] pretty close one, yeah." After this response, petitioner's counsel objected "as to relevance."

The court overruled petitioner's objection, and Mr. Shumate further testified that when he stayed with petitioner overnight, he would stay in petitioner's room. Mr. Shumate noted that he did not have his own room in petitioner's house. The State then asked where Mr. Shumate obtained the counterfeit bills that he had at Walmart. Mr. Shumate indicated that he got them from petitioner and informed petitioner he was going to try to spend the bills. According to Mr. Shumate, "[i]t took a while. [Petitioner] seemed like he did n[o]t want to do it at first, but, finally, I got it." Mr. Shumate indicated that he took counterfeit bills from their shared bedroom before going to Walmart. Mr. Shumate also testified that he was using methamphetamine during this time and had used methamphetamine with petitioner on several occasions. The State asked, "[w]hen you did meth with [petitioner], where did the meth come from?" Mr. Shumate answered, "I could n[o]t tell you that. It came from him when I got it." During this period, Mr. Shumate acknowledged that he had no income and petitioner would offer Mr. Shumate methamphetamine. Mr. Shumate testified that he (Mr. Shumate) had no digital scales, nor did he remember having baggies for any reason. At trial, Mr. Shumate denied selling methamphetamine. Mr. Shumate further denied ever paying for methamphetamine, but when asked by the State if petitioner asked him for sexual favors, Mr. Shumate testified, "[y]eah, we [ha]ve done stuff like that before, yeah."

Finally, Mr. Shumate testified that petitioner was also in a relationship with Ms. Lloyd, who was "supposed to have been his wife." Mr. Shumate explained that Ms. Lloyd did not stay in petitioner's room and that Mr. Shumate's presence in petitioner's home affected the relationship between petitioner and Ms. Lloyd. Mr. Shumate testified that "[i]t was like we barely knew she was around."

Next, Ms. Lloyd testified that she was engaged to petitioner and that she and petitioner were residing together in May of 2018, at the time of his arrest. Ms. Lloyd testified that on the night when law enforcement came to the home, she and petitioner were not sharing a bedroom. In the months leading up to law enforcement coming to the home, Ms. Lloyd explained that Mr. Shumate had stayed at the residence. According to Ms. Lloyd, when Mr. Shumate resided at the home, he stayed in either the guest room or in petitioner's room. When law enforcement came to petitioner's home, they removed items from petitioner's room. According to Ms. Lloyd, petitioner kept items in his room and neither petitioner nor Ms. Lloyd shared a lavatory. Ms. Lloyd further testified that petitioner tried to give her counterfeit money, which she took to be a joke on petitioner's part. Ms. Lloyd recalled being told by Mr. Shumate that he had obtained some counterfeit money from petitioner. Ms. Lloyd testified that petitioner had digital scales, which he claimed to use to weigh items for postage.

3

After the State rested, petitioner moved for judgment of acquittal on all three counts, which the circuit court denied. Petitioner then called Mr. Shumate as a witness for the defense and attempted to impeach Mr. Shumate with certain prior inconsistent statements. Petitioner then finished the presentation of his case.

On July 23, 2020, the jury returned its verdict, finding petitioner guilty of possession of counterfeit money with intent to utter (a lesser included offense of counterfeiting) under Count 1; conspiracy to commit a felony, to wit: counterfeiting under Count 2; and possession of methamphetamine with intent to deliver a controlled substance under Count 3. The circuit court sentenced petitioner to one year of incarceration on Count 1, an indeterminate term of one to five years on Count 2, and an indeterminate term of one to five years on Count 3. The circuit court ordered that Count 1 be served concurrently with Count 2 and that Counts 1 and 2 be served consecutively to Count 3. The court entered its order sentencing petitioner on February 2, 2021, and this appeal followed.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner first argues that the circuit court erred in allowing evidence of the sexual relationship between him and Mr. Shumate, another male, in a way "that can only be viewed as prejudicial and without probative value, and in such a manner that was a violation" of petitioner's basic and fundamental liberties. According to petitioner, this evidence "paint[ed] [him] as a general bad actor" and simply confused the issues that the jury should have considered when weighing the alleged offenses. We do not agree. Under Rule 401 of the West Virginia Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Further, "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 9, *State v. Whittaker*, 221 W. Va. 117, 650 S.E.2d 216 (2007) (citations omitted). And "[o]nly rarely, in extraordinary circumstances, will we from a vista of a cold appellate record reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *State v. Potter*, 197 W. Va. 734, 751, 478 S.E.2d 742, 759 (1996). We have previously stated that "[t]he relevant inquiry is whether a reasonable person, with some experience in the everyday world, would believe that the evidence *might be helpful* in determining the falsity or truth of any fact of consequence." *State v. Derr*, 192 W. Va. 165, 178, 451 S.E.2d 731, 744 (1994) (emphasis added).

Here, the State's theory was that Mr. Shumate—who was admittedly an unemployed drug abuser—was receiving methamphetamine from petitioner in exchange for sexual favors. Simply

put, the State put forth evidence that petitioner was providing Mr. Shumate methamphetamine in exchange for sex. As such, the evidence of the sexual relationship between petitioner and Mr. Shumate was relevant, and the circuit court did not abuse its discretion in overruling petitioner's relevancy objection.

Finally, petitioner contends that the circuit court erred in denying his motion for judgment of acquittal, and subsequent motions for a new jury trial and a post-judgment verdict of acquittal. "[T]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Jenner*, 236 W. Va. 406, 413, 780 S.E.2d 762, 769 (2015) (citations omitted). But under this Court's well-settled law regarding sufficiency of the evidence claims, "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). This is because our review is "highly deferential to the jury's verdict," *State v. Thompson*, 240 W. Va. 406, 414, 813 S.E.2d 59, 67 (2018), and we "review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and . . . credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Importantly, "[t]he evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt," and "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.*

Here, petitioner contends that there was insufficient evidence to prove that he was guilty of possession of a controlled substance with intent to deliver. We disagree. In order to sustain a conviction, the State had to prove petitioner possessed methamphetamine with intent to deliver it. W. Va. Code § 60A-4-401(a). When the State asked Mr. Shumate, "[w]hen you did meth with [petitioner], where did the meth come from?" Mr. Shumate answered, "I could n[o]t tell you that. It came from him [petitioner] when I got it." Mr. Shumate also testified that petitioner would offer him methamphetamine. Mr. Shumate's testimony was, in and of itself, sufficient for the jury to have convicted petitioner of possession with intent to deliver. Furthermore, petitioner does not contest that law enforcement officers located "scales, baggies, and drugs" within his bedroom.

Next, petitioner asserts that there was insufficient evidence below to support his conviction of conspiracy to counterfeit.

> In order for the State to prove a conspiracy under *W.Va.Code*, 61-10-31(1),[2] it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy.

Syl. Pt. 4, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981) (footnote added). To address petitioner's assertion that the State failed to show that there was cooperation between petitioner

---

[2]Under West Virginia Code § 61-10-31, "[i]t shall be unlawful for two or more persons to conspire (1) to commit any offense against the State . . . if . . . one or more of such persons does any act to effect the object of the conspiracy."

and Mr. Shumate, we point to *Less*: "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, *and the State is not required to show the formalities of an agreement*." *Id.* at 265, 294 S.E.2d at 67 (emphasis added) (citations omitted).

In the instant case, we find that the evidence, when viewed in the light most favorable to the State and crediting all inferences and credibility assessments in the State's favor, was sufficient to support petitioner's conspiracy to counterfeit. Mr. Shumate testified that he received the counterfeit bills he was using at Walmart from petitioner. Further, Mr. Shumate testified that he told petitioner that he was going to try and spend the bills. According to Mr. Shumate, "[i]t took a while. [Petitioner] seemed like he did n[o]t want to do it at first, but, finally I got it." Mr. Shumate explained that he took the counterfeit bills from their shared bedroom before going to Walmart.

Petitioner claims that he and Mr. Shumate lacked clear minds during the transfer of bills from him to Mr. Shumate and that Mr. Shumate had a hostile motive to the petitioner that would impact his testimony. However, petitioner is essentially asking this Court to substitute its judgment for that of the jury. Here, the jury had the opportunity to observe the witnesses during their testimony and examine all of the evidence presented, both direct and circumstantial. We will not substitute our judgment for the credibility determinations of the jury. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, petitioner has not met his heavy burden of establishing an insufficiency of the evidence to support his convictions. For these reasons, we find that petitioner is not entitled to relief from his convictions or the sentences imposed.

Affirmed.

**ISSUED:** October 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

6