656 S.E.2d 444

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Thomas Joseph MacPHEE, Defendant Below, Appellant.**

No. 33297.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2007.

Decided Oct. 12, 2007.

**694**

E. Taylor George, Esq., Assistant Public Defender, Robert C. Catlett, Esq., Assistant Public Defender, Kanawha County Public Defender Office, Charleston, WV, for the Appellant.

Sidney H. Bell, Esq., McDowell County Prosecuting Attorney, Welch, WV, for the Appellee.

PER CURIAM:

This case is before this Court upon the appeal of Thomas Joseph MacPhee from his convictions in the Circuit Court of McDowell County, West Virginia, of murder of the first degree and conspiracy. Pursuant to an order entered on June 13, 2005, MacPhee was sentenced to life, with a recommendation of mercy, upon the murder conviction and 1 to 5 years upon the conspiracy conviction, the sentences to be served consecutively. By order entered on May 2, 2006, the sentences were reimposed for purposes of appeal to this Court. The convictions arose from a jury trial upon an indictment charging Mac-Phee and Danny Wade England with the murder, and conspiracy to commit murder, of Lori Ann Keaton. Appellant MacPhee was also convicted of grand larceny relating to Ms. Keaton's death and was sentenced for that offense to a term of 1 to 10 years. MacPhee, however, does not appeal from the grand larceny conviction.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. MacPhee contends that the verdict of the jury should be set aside because the evidence was insufficient to establish premeditation with regard to the murder conviction. Moreover, with regard to the conspiracy conviction, MacPhee contends that the evidence was insufficient to show that he had an agreement with Danny Wade England to murder Ms. Keaton. This Court has undertaken a careful and deliberative examination of the testimony and exhibits admitted at trial and, viewing the evidence in the light most favorable to the prosecution as required under *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we find MacPhee's contentions unconvincing. Therefore, for the reasons set forth below, the orders of the Circuit Court entered on June 13, 2005, and May 2, 2006, sentencing appellant MacPhee to the penitentiary for murder of the first degree and conspiracy to commit murder are affirmed.

**I.**

**Factual Background**

Lori Ann Keaton, age 46, and her husband, James R. Keaton, were married in April 2002 and lived in the Town of Gary, McDowell County. Ms. Keaton had just moved to the area from Michigan. Soon after, the Keatons purchased an additional house in Hensley Hollow, also in McDowell County, and lived there for a short time. In December 2002, they conveyed the Hensley Hollow house to the appellant, Thomas Joseph Mac-Phee, and his wife Deborah. The MacPhees were from New Jersey and paid for the

house in cash. Following the conveyance, the Keatons returned to their house in Gary.

Thereafter, the Keatons began to socialize with appellant MacPhee and an individual by the name of Danny Wade England. The record indicates that during this time, and at the time of the alleged murder, Deborah MacPhee was in New Jersey. Animosity soon developed, however, between James R. Keaton and England over England's attentions toward Lori. Moreover, Lori gave England, or permitted him to hold on her behalf, a substantial sum of money which, according to appellant MacPhee, could have included some of the purchase money the Keatons received from the MacPhees for the house in Hensley Hollow. Lori made frequent attempts to contact England for the return of the money. England insisted, however, that he had already given the money back to her.

On January 30, 2003, Lori Ann Keaton disappeared. Just prior thereto, she had informed others that she was going to drive to Michigan to visit her children from a previous marriage. The children were a son and a pregnant daughter. The daughter testified at trial that Lori usually traveled with a large amount of cash and would never go anywhere without her pet dog, Tonka.[1]

Lori's body was never found nor has any of her money been located. However, shortly after her disappearance, her dog appeared in Salem, Virginia, and, through the identification on its collar, was returned to Lori's family. In February 2003, MacPhee told the State Police that he had no knowledge concerning Lori's whereabouts.

In April 2003, a hunter notified the police of what appeared to be a shallow grave in a wooded area known as Wilmore, some 8 to 10 miles from appellant MacPhee's house in Hensley Hollow. Although no body was found, State Troopers recovered a number of personal items including a jacket and belt buckle later identified as belonging to Lori Ann Keaton. The Troopers also found a piece of blue-jean material containing a blood stain. DNA from the stain was subsequently determined to be consistent with the DNA of a sample of Lori's hair obtained from her family.

Later, in May 2003, the police located Lori's car, a Mercury Grand Marquis, at a residence belonging to Kenneth Jerry Wood near Hensley Hollow. The car was covered with a tarp, and the license plate was missing. Wood subsequently testified at trial that MacPhee appeared at his residence at 4:00 a.m. in January 2003 and asked Wood if he could leave the car there. According to Wood, MacPhee stated that the Grand Marquis belonged to his wife, Deborah, and that he wanted to park it in a safe place while in the process of moving to the area from New Jersey. Wood consented, and MacPhee gave him a shotgun from the trunk of the car.[2] Wood wrote the MacPhee's local telephone number on the wall above his couch.

On May 13, 2003, the State Police went to appellant MacPhee's house and again asked him about Lori Ann Keaton's whereabouts. During the inquiry, the Troopers brought Kenneth Jerry Wood to the house who identified MacPhee as the individual who brought the car to Wood's residence. MacPhee then began a series of statements ultimately telling the officers that Danny Wade England shot and killed Lori at MacPhee's house and that, although he did not witness the shooting or know that it was going to occur, he helped England conceal Lori's body.

MacPhee's statements were given at his house in Hensley Hollow, at the site of the shallow grave in the Wilmore area and at the

---

1. During the trial, the daughter testified as follows with regard to Lori Ann Keaton's tendency to travel with a large amount of cash:

   Q. Were you familiar with whether or not [Lori] carried cash with her when she traveled, when she made trips?
   A. She usually had a wallet full of hundreds when she traveled. She didn't like to carry credit cards too much. She depended on cash.

2. The record indicates that both Lori Ann Keaton and Danny Wade England owned a shotgun. Neither shotgun, however, nor any other weapon was specifically identified at trial as the murder weapon. According to the testimony before the jury, in the spring of 2003 after Lori's disappearance, MacPhee sold a shotgun to an individual named Melvin Bolden for $75. That shotgun may have been the one owned by England, but the record is unclear in that regard.

State Police Detachment in Welch, West Virginia. As discussed in detail below, MacPhee told the State Police: (1) that Lori and England were arguing inside the MacPhee house about whether England was holding some of Lori's money, (2) that MacPhee was on the porch outside when he was surprised by the sound of a shot, (3) that he ran inside and found Lori on the floor bleeding from a chest wound, (4) that fearing England, who was holding the shotgun, he became involved in concealing Lori's body, (5) that he and England cleaned the blood from the floor, wrapped Lori's body in clear plastic and blankets and burned the clean-up material, along with Lori's purse, in MacPhee's yard, (6) that they put Lori's body in MacPhee's Jeep and drove to Wilmore where they placed her in a shallow grave and covered her with rocks and branches, (7) that, instead of putting the car in a mine shaft as England suggested, MacPhee drove Lori's Grand Marquis, which was parked at his house in Hensley Hollow, to the residence of Kenneth Jerry Wood and (8) that MacPhee drove Lori's dog, Tonka, to the vicinity of Salem, Virginia, where he released it.

Appellant MacPhee consented to a search of his house and surrounding property. The State Troopers collected a blood stain from a section of flooring in MacPhee's house. DNA from that stain was determined to be consistent with the DNA of Lori Keaton. In addition, the State Troopers located a license plate buried in MacPhee's yard which proved to be the missing plate from Lori's car.

## II.

### Procedural Background

On December 18, 2003, a McDowell County grand jury returned an indictment charging appellant MacPhee and Danny Wade England with murder of the first degree and conspiracy to commit murder. In addition, MacPhee was charged with the grand larceny of the Mercury Grand Marquis.[3] MacPhee was tried separately from England, and his trial began on April 25, 2005. MacPhee did not testify, nor did England appear as a witness.[4] MacPhee's statements to the police given on May 13 and 14, 2003, were admitted into evidence in the form of video recordings as State's exhibits 4 through 7 and played for the jury. The admissibility of the recordings is not challenged before this Court.

The jury found appellant MacPhee guilty of murder of the first degree with a recommendation of mercy, conspiracy and grand larceny. Thereafter, his motions for a judgment of acquittal and for a new trial were denied. Pursuant to the order of June 13, 2005, MacPhee was sentenced to life, with a

---

3. Pursuant to W. Va.Code § 61-2-1 (1991), murder of the first degree can result from "any willful, deliberate and premeditated killing" or from the commission of, or attempt to commit, certain named offenses, such as arson or robbery. The latter provision of W. Va.Code § 61-2-1 (1991), thus sets forth felony murder as an alternative means of committing murder of the first degree. See, syl. pt. 5, Stuckey v. Trent, 202 W.Va. 498, 505 S.E.2d 417 (1998).

Here, the murder charge returned by the McDowell County grand jury included both an allegation of a willful, deliberate and premeditated killing and a felony murder theory with robbery as the predicate offense. During appellant MacPhee's trial, however, the State withdrew all references to felony murder. As the record indicates, the State did not contend that MacPhee robbed Lori Ann Keaton at the time of the shooting. Rather, the State asserted that MacPhee was guilty of the grand larceny of her car. See, W. Va.Code § 61-3-13(a) (1994). .

With regard to the conspiracy charge, W. Va. Code § 61-10-31 (1971), provides that it shall be unlawful for two or more persons to conspire "to commit any offense against the State" if one or more of such persons "does any act to effect the object of the conspiracy." In State v. Less, 170 W.Va. 259, 294 S.E.2d 62 (1981), this Court observed: "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence[.] * * * ' The substantive crime which is the object of the conspiracy can be proven as the overt act." 170 W.Va. at 265, 294 S.E.2d at 67. See also, State v. Rogers, 215 W.Va. 499, 502, 600 S.E.2d 211, 214 (2004). The concept is an old one. As stated in Vol. II, F. Wharton, A Treatise on Criminal Law § 1398 at pg. 239 (9th ed. 1885): "If, therefore, it appear that two or more persons, acting in concert, are apparently pursuing the same object, often by the same means, one performing part of an act, and the other completing it, for the attainment of the object, the jury may draw the conclusion that there is a conspiracy."

4. According to the State, Danny Wade England was never brought to trial and has died from an illness.

recommendation of mercy, upon the murder conviction, 1 to 5 years upon the conspiracy conviction and 1 to 10 years upon the conviction of grand larceny. The Circuit Court directed the sentences to be served consecutively. On May 2, 2006, the sentences were reimposed for purposes of appeal. This Court granted MacPhee's appeal in January 2007.

## III.

### Standard of Review

The matters under review before this Court concern only the sufficiency of the evidence at trial. Appellant MacPhee contends that the verdict of the jury should be set aside because the evidence was insufficient to establish premeditation with regard to the murder conviction and insufficient to establish agreement with regard to the conspiracy conviction. Those contentions have in common MacPhee's assertion that he was on the porch outside when the shooting took place and that he did not know it was going to occur. As stated above, the admissibility of his video recorded statements to the police

is not challenged. Nor does MacPhee allege error concerning the search of his house and property or the instructions given to the jury.[5]

■ In syllabus point 1 of *Guthrie, supra,* this Court observed:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Mann,* 205 W.Va. 303, 518 S.E.2d 60 (1999); syl. pt 1, *State v. Browning,* 199 W.Va. 417, 485 S.E.2d 1 (1997); syl. pt. 4, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996). *See also,* syl. pt. 2, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996).[6]

---

**5.** In addition to claims of insufficiency of the evidence, MacPhee alleged in the petition for appeal that reversible error occurred because of inflammatory remarks made by the prosecutor to the jury and because the State failed to present evidence, beyond MacPhee's own statements, of the *corpus delicti,* i.e., that Lori Ann Keaton was dead and that her death was the result of some criminal agency. Upon the latter point, syllabus point 4 of *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983), recognizes that, to prove the *corpus delicti,* two facts must be established: "(\*) The death of a human being and (2) a criminal agency as its cause." More specifically, in syllabus point 5 of *State v. Garrett,* 195 W.Va. 630, 466 S.E.2d 481 (1995), this Court held:

The *corpus delicti* may not be established solely with an accused's extrajudicial confession or admission. The confession or admission must be corroborated in a material and substantial manner by independent evidence. The corroborating evidence need not of itself be conclusive but, rather, is sufficient if, when taken in connection with the confession or admission, the crime is established beyond a reasonable doubt.

In the case before us, MacPhee's statements describing the shooting death of Lori Ann Keaton and the concealment of her body were consistent with the discovery, at what appeared to be a shallow grave, of the jacket, the belt buckle and

the blue-jean material containing the blood stain, as well as the license plate and blood stain found at MacPhee's house and the locating of Lori's car at Wood's residence.

In any event, the alleged errors concerning the inflammatory remarks and the *corpus delicti* are not before this Court. The order of this Court entered on January 24, 2007, strictly limited this appeal to MacPhee's claims that the evidence was insufficient to show premeditation and conspiratorial agreement.

**6.** Syllabus point 2 of *LaRock* states:

When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. pt. 3, *State v. Williams,* 209 W.Va. 25, 543 S.E.2d 306 (2000). *See,* Vol. 2, F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12–4(B). at 12–72,73 (4th ed.–2000) (discussing *Guthrie* and *LaRock*).

## IV.

### Discussion

■ Denying any involvement in the actual shooting of Lori Ann Keaton, appellant MacPhee, nevertheless, admits that the homicide occurred in his house and that he and England cleaned the blood from the floor, wrapped Lori's body, and burned the clean-up material and her purse, in his yard. MacPhee also admits that he and England drove Lori's body in MacPhee's vehicle to the Wilmore area and concealed her body in the shallow grave.[7] In addition, MacPhee admits taking Lori's car to the Wood residence, rather than putting it in a mine shaft, and admits transporting to and releasing her dog near Salem, Virginia. MacPhee contends, therefore, that, as those circumstances demonstrate, he was an accessory after the fact, rather than an accessory before the fact or a principal in the first or second degree. Thus, MacPhee argues that the elements of premeditation and agreement cannot be assigned to him.

■ Relevant to MacPhee's assertions is this Court's holdings in syllabus points 8 and 10 of *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989):

> 8. Where a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense.

10. Proof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime.

Syl. pt. 3, *State v. Ladd*, 210 W.Va. 413, 557 S.E.2d 820 (2001); syl. pts. 3 and 4, *State v. Miller*, 204 W.Va. 374, 513 S.E.2d 147 (1998); syl. pts. 2 and 4, *State v. Kirkland*, 191 W.Va. 586, 447 S.E.2d 278 (1994).

■ Pursuant to W. Va.Code § 61–11–6 (1923), in every felony, "every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; and every accessory after the fact shall be confined in jail not more than one year and fined not exceeding five hundred dollars." As explained in syllabus point 5 of *State v. Fortner, supra:* "A person who is the absolute perpetrator of a crime is a principal in the first degree, and a person who is present, aiding and abetting the fact to be done, is a principal in the second degree." *See, State v. Hoselton*, 179 W.Va. 645, 648, 371 S.E.2d 366, 369 (1988) (Principals in the second degree are punishable as principals in the first degree); *State v. Duncan*, 179 W.Va. 391, 395 n. 6, 369 S.E.2d 464, 468 n. 6 (1988) (The terms "principal in the second degree" and "aider and abettor" are synonymous); Vol. 1A M.J., *Accomplices and Accessories* § 4 (Matthew Bender & Co.–2004) (If a person is present at the commission of the crime, inciting, encouraging, advising or assisting in the act done, he is deemed to be an aider and abettor and is liable as principal).[8]

> To be a principal in the second degree, one must be present at the commission of a criminal offense and aid, counsel, command or encourage the principal in the first degree in the commission of that offense. This requirement of presence may be fulfilled by constructive presence. A person is constructively present when he is physically absent from the situs of the crime but aids and abets the principal in the first degree at the time of the offense from some distance. This may happen when one stands watch for the primary actor, signals to the principal from a distance that the victim is coming, or stands ready (though out of sight or

---

7. It should be noted that, W. Va.Code § 61–2–5a(a) (2006), provides in part: "Any person who, by any means, knowingly and willfully conceals, attempts to conceal or who otherwise aids and abets any person to conceal a deceased human body where death occurred as a result of criminal activity is guilty of a felony [.]" That statute, promulgated in 2006, is not applicable to the circumstances herein.

8. The following commentary concerning principals in the second degree or aiders and abettors is found in Vol. 2, W.R. LaFave, *Substantive Criminal Law* § 13.1(b) (2nd ed.–2003):

In addition to playing the video recorded statements of appellant MacPhee for the jury, the State called Jerry Denver Massey in its case-in-chief. Massey was incarcerated with MacPhee for two to three months at the Southwestern Regional Jail in Logan County, West Virginia. According to Massey, Mac-Phee told him that he and another person beat a woman to death in her home, robbed her for drug money and put her body in a mine shaft. As Massey told the jury:

> Q. And what did he tell you that he and the second person did together?
>
> A. They had went in and beat her to death and robbed her and took what money and stuff—some stuff and then took her body and put it in a mine shaft.
>
> * * *
>
> Q. —robbed her and put the body into a mine shaft?
>
> A. Yeah. He had said he didn't think—you know, that was one of the reasons he had talked about it a little bit, that he didn't think that—he thought he was going to get away with it because there was no evidence.

Appellant MacPhee asserts that, inasmuch as Massey admitted at trial that he came forward because it might help him obtain a plea agreement in his own case, his testimony is not worthy of consideration in determining whether the evidence against MacPhee was sufficient to support the convictions. However, it must be noted that, rather than moving to strike Massey's testimony, MacPhee's trial counsel engaged in cross-examining Massey and arguing to the jury that Massey should not be believed. In denying MacPhee's motion for a judgment of acquittal following the State's case-in-chief, the Circuit Court stated in reference to Massey's testimony:

> I don't know how much weight the jury is going to give Mr. Massey. He says that—He says that the defendant told him in the jail that "We beat her up and killed her for this money." Well, all the way through, it would appear that Danny England was holding some money for Lori Keaton. His story is consistent—I'm talking about Mr. Massey—is consistent with what has been forth that-now, there's a lot of questions I have, I have to admit, . . . . I mean, was she shot, was she beaten up, was she put down a mine shaft? That's for the jury to decide.[9]

In addition to the testimony of Jerry Denver Massey, appellant MacPhee's video recorded statements contain several matters tending to undermine his assertion that his participation in Lori's death was merely after the fact. In the first video recording, Mac-Phee states that he arrived home and found Lori's body in his front yard already wrapped up. Danny Wade England was present but never told MacPhee how Lori was killed. At that point, they drove her body to the Wilmore area. In the second video recording, however, MacPhee states: (1) that Lori and England were in MacPhee's house in his presence arguing about the money England was allegedly holding, (2) that MacPhee went to the porch outside and then heard the shot,[10] (3) that, although MacPhee thought Lori was dead, he saw her bleeding and told her he was going to call 911 but was prevented from doing so by England and (4) that the shotgun belonged to England but

hearing) to render aid to the principal if needed. While "close physical proximity to the scene of the crime" is not necessary, one must be close enough to render aid if needed.

9. In addition, during the June 3, 2005, hearing upon appellant MacPhee's post-trial motions, the Circuit Court observed: "And where was it that they were going to put the car? In a mine shaft." Moreover, although Massey stated that MacPhee and the second person beat the woman "in her house," the State brought out during Massey's testimony that he was unaware that

MacPhee had purchased a house from the woman who was killed.

10. The porch does not extend along the length of the front of the MacPhee house. Instead, it is a small enclosure constituting the left corner of the house behind which the front door is located. The distance from the porch through the door to the alleged position of England and Lori inside the house at the time of the shooting would more appropriately be measured in feet rather than yards. According to MacPhee's second recorded statement, he could hear the argument between Lori and England from outside the house.

England had left it at MacPhee's house "for a couple of days" before the shooting.

In the third video recording, appellant MacPhee indicates that it was his idea to take Lori's Mercury Grand Marquis to the residence of Kenneth Jerry Wood, rather than placing it in a mine shaft. Finally, in the fourth video recording MacPhee again stated that it was his idea to take the car to the Wood residence. In addition, MacPhee states that, in the days following Lori's death, he and England "talked about moving the body; it wasn't in the greatest place in the world."

## V.

### Conclusion

As long recognized, "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellant court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution[.]" Syl. pt. 3, in part, *State v. Guthrie, supra.* See also, *State v. LaRock, supra,* 196 W.Va. at 304, 470 S.E.2d at 623 (In a sufficiency of the evidence challenge, the evidence must be viewed from "the prosecutor's coign of vantage").

The jury had a full and deliberative opportunity to consider not only the evidence presented, but also the credibility of MacPhee. The evidence positively establishes, through MacPhee's own statements, that Lori was killed. Despite MacPhee's contradictory statements, the physical evidence establishes his presence at the scene of the crime and his positive attempts to cover-up the crime. The testimony of Massey, which was subjected to MacPhee's cross-examination, establishes that in the months following his arrest, MacPhee confessed to him that he and a second person had killed a woman. Weighing the totality of the evidence, including MacPhee's multiple conflicting statements, and considering its belief as to the credibility of MacPhee and the other witnesses, the jury obviously chose to disbelieve MacPhee's uncorroborated statements that he left the room just prior to the killing of Lori and re-entered just afterward. As also recognized in *Guth-*

*rie:* "It is for the jury to decide which witnesses to believe or disbelieve." 194 W.Va. at 669 n. 9, 461 S.E.2d at 175 n. 9.

The evidence viewed in the light most favorable to the prosecution inexorably leads to the conclusion that the testimony and exhibits admitted at trial were amply sufficient to support appellant MacPhee's convictions, as a principal, of murder of the first degree and conspiracy. The people of McDowell County are entitled to their verdict as fairly obtained, and the orders of the Circuit Court entered on June 13, 2005, and May 2, 2006, are affirmed.

Affirmed.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.