# United States Court of Appeals
## For the First Circuit

No. 20-2004

UNITED STATES,

Appellee,

v.

LUIS ALFREDO FLORENTINO-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McCafferty,* District Judge.

Javier A. Morales-Ramos for appellant.
Jordan H. Martin, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-
Almonte, Assistant United States Attorney, Chief, Appellate
Division, and Julia M. Meconiates, Assistant United States
Attorney, were on brief, for appellee.

December 2, 2021

* Of the District of New Hampshire, sitting by designation.

**LYNCH**, **Circuit Judge**.  Luis Alfredo Florentino-Rosario appeals his conviction for attempted illegal reentry into the United States.  He argues on appeal that the district court committed error at trial in refusing to instruct the jury as he requested and in not permitting him to argue the affirmative defense of duress.  He argues that these errors prevented him from developing his defense.  The district court did not err in refusing Florentino-Rosario's preferred jury instructions and did not abuse its discretion in refusing to allow presentation of a duress defense, so we affirm.

## I.

Authorities first apprehended Florentino-Rosario at a Puerto Rico airport in September 2019.  He had only a Dominican Republic passport and he told the authorities that he was a Dominican citizen.  He admitted that he came illegally to the United States by sea several months previously.  Florentino-Rosario was informed that he was banned from reentering the United States for five years and was removed to the Dominican Republic that same day.

In October 2019, authorities stopped a boat roughly nineteen nautical miles off the coast of Puerto Rico.  The boat was covered in a blue tarp, a common tactic of drug smugglers, and was carrying fourteen passengers including Florentino-Rosario.  One of the passengers told the authorities that the boat had come

from the Dominican Republic.  Florentino-Rosario was subsequently arrested.

Florentino-Rosario admitted that he had paid $2,000 for passage on the boat to the United States.  He confirmed that he had no legal right to be in the United States and that he had applied for a visa but had been denied.  When asked why he wanted to come to the United States, he said he wanted to make money so that he could build a house in Cotuí, Dominican Republic.  He was subsequently charged with criminal attempted reentry into the United States, 8 U.S.C. § 1326(a), which forbids "any alien who[] has been . . . deported, or removed . . . [to] enter[], attempt[] to enter, or [be] at any time found in, the United States" unless the alien has the consent of the Attorney General or can demonstrate that such consent is not needed.

In anticipation of trial, both parties submitted proposed jury instructions.  The government submitted instructions drawn from the First Circuit Pattern Jury Instructions regarding § 1326(a), which do not instruct the jury to find specific intent. The government's instructions stated that to obtain a conviction, the government must prove beyond a reasonable doubt:

> First, that LUIS ALFREDO FLORENTINO-ROSARIO was an alien at the time of the alleged offense;
> Second, that LUIS ALFREDO FLORENTINO-ROSARIO had previously been deported;

- 3 -

> Third, that LUIS ALFREDO FLORENTINO-ROSARIO attempted to re-enter the United States; and
>
> Fourth, that LUIS ALFREDO FLORENTINO-ROSARIO has not received the express consent of the Attorney General of the United States to apply for re-admission to the United States since the time of his previous arrest and deportation.

Florentino-Rosario responded to the proposed instructions, requesting three separate jury instructions: 1) an instruction that attempted reentry is a specific intent crime; 2) an instruction explaining the difference between knowing and purposeful mental states under the Model Penal Code; and 3) an instruction on the defense of duress/necessity. The government then filed a motion in limine to preclude presentation of a duress defense and to prevent Florentino-Rosario from entering his asylum petition, which he filed after he was arrested, into evidence.[1]

---

[1] Florentino-Rosario asserts in his brief that he was attacked in June 2018 in the Dominican Republic, before he came to Puerto Rico the first time. Florentino-Rosario states that the boyfriend of his child's mother threatened to kill him. He asserts that the boyfriend belonged to a local gang with a "certain degree of authority." Men from the gang chased Florentino-Rosario. One of the men swung a machete at him, which Florentino-Rosario blocked with his forearm, sustaining a serious cut. Bystanders intervened to stop the attack. Florentino-Rosario states that he filed a police report, but no action was taken because, he believes, the police did not want to interfere with the local gang. He explains that he went into hiding, ultimately going to Puerto Rico for the first time around May 2019 out of fear for his life. After he was removed to the Dominican Republic the first time, he began receiving death threats, which was why he attempted reentry in October 2019.

Florentino-Rosario wanted to enter his asylum petition into evidence to support his duress defense, and he opposed the prosecution's motion in limine to exclude it. The district court sided with the prosecution, precluding Florentino-Rosario from arguing duress at trial and from entering his petition for asylum into evidence.

Florentino-Rosario then objected to the district court's proposed jury instructions. The district court took note of the objection and told Florentino-Rosario the matter would be addressed at the charging conference. Before the trial, the parties once again contended with Florentino-Rosario's request for a specific intent instruction and his desire to enter his asylum petition into evidence. The district court found that the asylum petition was irrelevant to the criminal case and noted that, contrary to Florentino-Rosario's claim that he lacked specific intent, "it would seem . . . that if he requested asylum he did have intent." The court also denied Florentino-Rosario's requested jury instructions.

Florentino-Rosario's jury trial was held on February 24, 2020. The defense did not present evidence or make an opening or closing argument at trial. The district court instructed the jury primarily using the pattern jury instructions for attempted reentry. The trial court told the jury that the prosecution must prove beyond a reasonable doubt "that the defendant intended to

commit the crime of re-entering the United States without permission from the United States' authorities after having been previously removed from the United States."

The district court went beyond the pattern instructions to provide an additional instruction as to the distinction between "knowingly" and "intentionally."

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.
> To act "intentionally" or "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed -- that is to say, with a bad purpose, either to disobey or disregard the law -- not to act by ignorance, accident or mistake.

The government does not appear to have objected to this supplemental instruction. Florentino-Rosario once again objected to the instructions. The jury convicted him.

Florentino-Rosario filed a Federal Rule of Criminal Procedure Rule 29 motion for an acquittal and an alternative Rule 33 motion for a new trial, arguing that the evidence was insufficient to convict and that the court had erred in denying his preferred jury instructions and in not permitting admission of his asylum petition. The district court denied the motion. The court sentenced Florentino-Rosario to five years' probation.[2]

_____

[2] Florentino-Rosario has been removed to the Dominican

- 6 -

Florentino-Rosario now appeals his conviction.[3]

## II.

Florentino-Rosario argues that the trial court erred in denying his requested jury instructions as to the requisite level of intent and in refusing to admit his petition for asylum into evidence. We take these arguments in turn.

## A.

Preserved objections to denials of requested jury instructions are reviewed under a "split standard": questions as to whether the applicable law is correctly stated are reviewed de novo, while questions as to whether the instruction's phrasing is unfairly prejudicial are reviewed for abuse of discretion. DeCaro v. Hasbro, Inc. 580 F.3d 55, 61 (1st Cir. 2009). A trial court's refusal to give a requested jury instruction is only reversible error if the requested instruction is "(1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." White v. New Hampshire Dep't of Corr., 221 F.3d 254, 263 (1st Cir. 2000) (quoting United States v. DeStefano, 59 F.3d 1, 2

_____

Republic. The appeal is not moot, however, because a conviction for attempted reentry has consequences for reentry going forward. See, e.g., 8 U.S.C. § 1326(b)(1); see also United States v. Garcia-Zavala, 919 F.3d 108, 111 n.2 (1st Cir. 2019).

[3] In his Notice of Appeal, Florentino-Rosario states that he appeals the "Verdict / Judgment / Sentence" against him. However, he presents no arguments pertaining to his sentence.

- 7 -

(1st Cir. 1995)). Florentino-Rosario requested three separate instructions, one that attempted reentry is a specific intent crime, one that explained the difference between "knowing" and "purposeful" mental states under the Model Penal Code, and one outlining the defense of duress.

i.

The first jury instruction Florentino-Rosario requested was based on his misunderstanding of and selective quotation from United States v. De León, 270 F.3d 90, 92 (1st Cir. 2001). The excerpt states that attempted reentry "is a specific intent crime in the sense that an 'attempt to enter' requires a subjective intent on the part of the defendant to achieve entry into the United States as well as a substantial step toward completing that entry." Id. The "crux" of Florentino-Rosario's legal defense at trial was that he came to Puerto Rico "knowingly" but not "purposefully" because he came out of fear for his life. He admits that he knew that it was illegal for him to enter the United States but argues that he did not do it with a purpose to violate the law, and therefore lacked specific intent.

The district court instructed the jury that, in order to convict Florentino-Rosario, they needed to find that he had specifically intended to commit the crime of attempted reentry. As the district court itself recognized, and we discuss further below, this additional instruction is neither necessary nor

encouraged. See United States v. Florentino-Rosario, 459 F. Supp. 3d 345, 361 (D.P.R. 2020) ("[I]t is apparent the Court's instructions placed too high a burden on the government."). However, because the court's instruction "substantially incorporated" Florentino-Rosario's requested jury instruction, Florentino-Rosario's claim that the district court erred by refusing to use the exact language he proposed must fail. White, 221 F.3d at 263.

In De León, immediately after the excerpt Florentino-Rosario wanted to incorporate into the jury instructions, the court went on to explain that "there is no requirement that the defendant additionally know that what he proposes to do -- i.e., attempt to enter the United States -- is for him criminal conduct." 270 F.3d at 92 (emphasis added). Though Florentino-Rosario relies on De León to argue that the First Circuit has adopted an interpretation of attempted reentry under § 1326 which embraces a specific intent requirement, De León clearly forecloses his argument that he lacked the requisite intent to be found guilty of attempted reentry. Florentino-Rosario does not dispute that he knew it was illegal for him to reenter nor that he intentionally got on the boat where he was found in order to come to Puerto Rico. De León makes clear that a defendant need not even know that he is breaking the law in reentering, so it cannot be the case that De León requires that a defendant have a purpose to enter illegally in order to be found

guilty under § 1326. Florentino-Rosario's claim that he did not come to the United States with the intention of breaking the law is therefore irrelevant.

There is ample evidence in the record -- including Florentino-Rosario's own statements to the immigration official that he had applied for a visa and been denied and that he wanted to come to Puerto Rico to earn money to build a house back in the Dominican Republic -- to support a finding that he intended to enter the country. As the district court correctly noted, "[a]n asylum seeker may lack the intent to _illegally_ enter the United States. The same is not true, however, for an intent to enter the country." Florentino-Rosario, 459 F. Supp. 3d at 363 (citations omitted). Under De León, that is all that is required.

Our other precedents support this interpretation of § 1326. In United States v. Soto, we rejected a challenge by a defendant appealing his conviction after the district judge refused to instruct the jury that good faith was a defense to reentry. 106 F.3d 1040, 1041 (1st Cir 1997). Noting that, at the time, only a single circuit had endorsed the view that § 1326 contains a specific intent requirement, we found the appeal without merit. Id. In United States v. Cabral, we rejected the appeal of a defendant claiming the jury should have been instructed as to specific intent for attempted reentry. 252 F.3d 520, 524 (1st Cir. 2001). The court found that the evidence was sufficient to

support a finding of specific intent, such that it was not necessary to determine whether such an instruction was necessary. Id. The present case is even more straightforward: the record contains evidence that Florentino-Rosario intended to reenter the United States and that he knew doing so was illegal, though all that is required for conviction under our precedents is that he intended to reenter, whether he knew it was illegal or not. Moreover, the jurors were in fact instructed that they needed to find specific intent in order to convict, and they convicted. This argument is therefore doubly without merit.

Leaving aside these deficiencies in Florentino-Rosario's appeal, his underlying argument is incorrect because our own and other circuits' precedents lead us to conclude that attempted reentry under § 1326 is a general intent, and not a specific intent, crime. See, e.g., United States v. Rodriguez, 416 F.3d 123, 128 (2d Cir. 2005); United States v. Morales-Palacios, 369 F.3d 442, 449 (5th Cir. 2004); United States v. Peralt-Reyes, 131 F.3d 956, 957 (11th Cir. 1997). A specific intent instruction is, as a result, not appropriate and should not be given.[4]

---

[4] To the extent that Comment 3 to the First Circuit Pattern Jury Instructions on attempted reentry under § 1326 suggests otherwise, it should not be followed. See Pattern Criminal Jury Instructions for the District Courts of the First Circuit 78-79, https://www.med.uscourts.gov/pdf/crpjilinks.pdf.

ii.

The second jury instruction Florentino-Rosario requested was drawn from United States v. Bailey, 444 U.S. 394, 404 (1980), explaining the difference between "purpose" and "knowledge" under the Model Penal Code

> The definition of "intent" has been replaced with a hierarchy of culpable states of mind. The different levels in this hierarchy are commonly identified, in descending order of culpability, as purpose, knowledge, recklessness, and negligence. There is a distinction between the mental states of "purpose" and "knowledge": a) a person who causes a particular result is said to act purposefully if he consciously desires that result, whatever the likelihood of that result happening from his conduct; while b) a person is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result.

As the district court recognized, Florentino-Rosario's challenge fails all three prongs of requested-instruction review. See Florentino-Rosario, 459 F. Supp. 3d at 363. It is not a substantively correct statement of law to imply, as Florentino-Rosario's requested instruction would, that § 1326 incorporates the Model Penal Code's hierarchy of mental states rather than the common law general and specific intent mental states. Second, it was substantially incorporated into the district court's (unnecessary) supplemental instructions as to the distinction between knowingly and intentionally. Finally, as discussed above,

- 12 -

Florentino-Rosario readily admits that he knew he was reentering the United States after having previously been removed, which satisfies the intent requirement for attempted reentry under our precedents.

iii.

Florentino-Rosario's final requested jury instruction was the First Circuit's pattern jury instruction as to the justifications of self-defense, duress, and necessity. The district court correctly refused to give the instruction because Florentino-Rosario failed to make a threshold showing of duress.[5]

The affirmative defense of duress "requires proof that 'the defendant committed a crime as a result of (1) an immediate threat of serious bodily injury or death (2) that the defendant reasonably believed was true, (3) without a reasonable opportunity to escape or frustrate the threat.'" United States v. Lebreault-Feliz, 807 F.3d 1, 3-4 (1st Cir. 2015) (quoting United States v. Diaz-Castro, 752 F.3d 101, 108 (1st Cir. 2014)). When the proffer in support of an affirmative defense is insufficient as a matter of law to create a triable issue for the jury to consider, the

---

[5]    Though Florentino-Rosario styles his request as one for the "duress/necessity" defense, the elements in his requested instructions align with the elements of a duress defense, so we address it simply as a duress defense. At any rate, the affirmative defenses of duress and necessity are "closely related." United States v. Lebreault-Feliz, 807 F.3d 1, 4 (1st Cir. 2015).

judge may prevent the defendant from presenting that defense.  Id. at 4.

It should be noted that Florentino-Rosario made only legal arguments in support of his duress defense, and the district court had access to his asylum petition only because the prosecution attached it as an exhibit to its motion to exclude the duress defense.  Florentino-Rosario, 459 F. Supp. 3d at 364.  Even on the assumption that his assertions in the asylum petition were accurate, Florentino-Rosario's assertions do not make a sufficient showing to create a triable issue as to duress.

The threat that Florentino-Rosario asserted in his asylum petition fails to show duress for a number of reasons.  To start, the threat was not sufficiently immediate to support a duress defense.  His first entry into the United States came nearly a year after the initial attack he alleges.  Similarly, he says that he began getting death threats when he was removed to the Dominican Republic on September 9 but did not attempt to return to Puerto Rico until October.  Our precedents make clear that such lengthy spaces of time between the threat and the crime make it very unlikely that the threat will be considered "immediate."  In Lebreault-Feliz, a sixth month gap in time between the incident the defendant said caused him to flee to the United States and his application for a passport meant the threat was not sufficiently immediate for a duress or necessity defense.  807 F.3d at 4.

- 14 -

Florentino-Rosario's allegations at most demonstrate a lingering threat of future harm, not a threat of imminent danger.

Florentino-Rosario also failed to demonstrate that he did not have a reasonable opportunity to escape or frustrate the threat. He claims that he went to the authorities and they failed to act. However, he was able to successfully avoid his attackers for nearly a year after the initial assault by going into hiding in the Dominican Republic. He argues that it is not possible for him to make a living in hiding, but has not said why he could not move to another part of the Dominican Republic, or to a country that he was legally able to enter. See, e.g., United States v. Bonilla-Siciliano, 643 F.3d 589, 591 (8th Cir. 2011) ("[The defendant] cannot show that he lacked a reasonable, legal alternative to illegally reentering the United States, because he did not exclude the option of going to a country other than the United States . . . ."). Florentino-Rosario says that Puerto Rico is the "logical choice," because it is the second-closest country besides Haiti, and he does not speak Creole or French. Even accepting that returning to a country where one has recently been barred from reentering for five years is the "logical choice," convenience is not sufficient to make out a duress defense.

Florentino-Rosario did not make a threshold showing of duress and the district court did not err in refusing to instruct the jury on this affirmative defense.

**B.**

"Our standard of review of a district court's admission or exclusion of evidence is abuse of discretion."  United States v. Gilbert, 181 F.3d 152, 160 (1st Cir. 1999).  In order to be admissible, evidence must be relevant.  Fed. R. Evid. 402.

Florentino-Rosario argues that the district court erred by refusing to allow him to present evidence of a duress defense, including his petition for asylum.  As discussed above, the government does not need to prove that the defendant intended to enter the country illegally, so the district court did not abuse its discretion in concluding that the petition was not relevant to the case at hand.  See Florentino-Rosario, 459 F. Supp. 3d at 365-66.  Because Florentino-Rosario failed to make a threshold showing of duress, moreover, the district court did not abuse its discretion in refusing to allow him to present a duress defense and refusing to admit his asylum petition pursuant to that defense. See Lebreault-Feliz, 807 F.3d at 5.

**III.**

The judgment of the district court is affirmed.