# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff below, Respondent,**

**vs.) No. 21-0424** (Wyoming County 16-F-71)

**Candice T. Salmons,**
**Defendant below, Petitioner.**

**FILED**

**November 3, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

The Petitioner, Candice T. Salmons,[1] appeals from the final order of the Circuit Court of Wyoming County entered on April 21, 2021, sentencing her to terms of imprisonment of one to fifteen years for her Burglary conviction, one to ten years for her Grand Larceny conviction, and one to five years for her Conspiracy to Commit Burglary conviction with the sentences to run concurrently. On appeal, the Petitioner contends that the circuit court erred in denying her motions for judgment of acquittal on all three convictions.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable legal authorities, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### *Facts*[2]

On Thanksgiving night 2015, Jerry Goins, Jr.,[3] resided with his parents, Melissa and Jerry Goins, Sr., in a house the parents owned. The elder Goins were out-of-town on a

---

[1]The Petitioner appears by G. Todd Houck, Esquire, and the State appears by Attorney General Patrick Morrisey, Senior Assistant Attorney General Andrea Nease Proper, and Assistant Attorney General Gail V. Lipscomb.

[2]Some of the following facts come from redacted copies of the criminal complaints that West Virginia State Trooper Matthew Shifflett, the investigating officer, filed in the case. These redacted complaints were admitted into evidence at trial after the Petitioner's trial counsel agreed to the redactions.

[3]We refer to the younger Mr. Goins as Jerry so as to not confuse him with his father.

1

holiday trip. Jerry had imbibed considerably throughout Thanksgiving Day. Being alone, he decided to go to the Petitioner's nearby house that evening where he found the Petitioner and David Laney. Jerry informed the pair that his parents were not home and invited them to return with him to the Goins' house to play pool and drink. They accepted Jerry's invitation, even though Ms. Goins had banished the Petitioner from the Goins' home. She believed that the Petitioner had taken belongings from her residence on more than one occasion.

While Mr. Laney was shooting pool with Jerry at the Goins' house, the Petitioner was "in and out" of the billiard room, claiming a stomachache. The visit lasted approximately two hours and ended shortly after Jerry caught the Petitioner looking through Ms. Goins' bedroom closet. The Petitioner told Mr. Laney she was ready to go home, and they left.

The next day, Jerry noticed that cabinet doors in the Goins' house were open. Only the Petitioner and Mr. Laney had access to the Goins' home from the time Jerry's parents left on their trip until they returned.

Upon returning home, Ms. Goins told Mr. Goins that someone had been in their house because "[t]hings was a little bit disarrayed." Ms. Goins also discovered some of her belongings were missing. Ms. Goins, who had worked in retail for twenty-years, estimated the total value of the missing items was $17,000. Trooper Shifflett testified that Ms. Goins estimated the value of the goods alleged to have been stolen from her exceeded $1000.

In December of 2015, the Petitioner sold some purses, make-up, and a bracelet, items purloined from Ms. Goins' house during the November burglary, to Tina Riffe. Mr. Laney was present during the sale, and, in fact, the Petitioner and Mr. Laney were in Mr. Laney's car during the sale. The day after selling the purses, the Petitioner contacted Ms. Riffe and told her not to be seen with them as they had been stolen from the Goins' residence.

After the State rested its case, the Petitioner moved for judgments of acquittal on all three counts. The circuit court denied all three motions. The Petitioner rested without calling any witnesses. The jury convicted on all three counts. The Petitioner appeals arguing there was insufficient evidence to support the jury's verdicts.

### Standards of Review

The Petitioner sought motions for judgment of acquittal at the close of the State's case.[4] Under Rule 29(a) of the West Virginia Rules of Criminal Procedure, "[t]he [circuit]

---

[4]The Petitioner did not renew his motions before the case was submitted to the jury or after the jury's verdicts. We leave for another day the question of whether a defendant's

2

court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." We have explained that "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (per curiam). We review the circuit court's denial of the motion using the same standard as used by the circuit court, which in turn is identical to the standard employed to measure the sufficiency of evidence supporting a guilty verdict. In determining whether there was sufficient evidence to support a guilty verdict, West Virginia employs the standard set forth in *Jackson v. Virginia*, 443 U.S. 407 (1979). *See State v. LaRock*, 196 W. Va. 294, 303, 470 S.E.2d 613, 622 (1996) (observing that this Court had adopted the *Jackson* standard).

"The opinion of the Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Thus, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). "An appellate court does not reweigh the evidence presented in the court below[,]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007) (per curiam), because "the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).

Because *Jackson* only "'involves a very low threshold to sustain a conviction[,]'" *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted), a defendant asserting that there was insufficient evidence faces a "'a tough sell, an uphill battle, and a daunting hurdle[.]" *United States v. Florentino-Rosario*, 459 F. Supp. 3d 345, 354 (D.P.R. 2020) (cleaned up) (collecting cases), *aff'd*, 19 F.4th 530 (1st Cir. 2021). As explained in *Guthrie*:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that

---

failure to renew an unsuccessful mid-trial motion for judgment of acquittal at the end of trial or post-verdict constitutes a waiver. *See United States v. Johnson*, 726 F.2d 1018, 1020 n.1 (4th Cir. 1984).

the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163. "This standard is a strict one" and "a jury verdict will not be overturned lightly." *Id*. at 667–68, 461 S.E.2d at 173–74. "[A]ppellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978). As the United States Supreme Court has explained, a reviewing court can only reverse a jury's finding of guilt under *Jackson* when "that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam). Thus, granting a judgment of acquittal (or reversing a conviction for insufficient evidence) is only appropriate when "there is *no* evidence from which the jury could find guilt beyond a reasonable doubt." *State v. Zuccaro*, 239 W. Va. 128, 145, 799 S.E.2d 559, 576 (2017) (emphasis in original).

With these standards in mind, we now turn to the Petitioner's challenges to her convictions and, finding them meritless, we affirm the jury's verdicts.[5]

*Burglary*

Because this crime occurred in 2015, the 1993 version of the burglary statute, West Virginia Code § 61-3-11(a), applies. *See* 22 C.J.S. *Criminal Law: Substantive Principles* § 1 (2016) ("Ordinarily . . . an accused should be tried under the statute in effect at the time of the commission of a crime."). The 1993 version of our burglary statute provided, in pertinent part,

---

[5]The Petitioner's brief in this Court is somewhat perfunctory and conclusory. Therefore, we have applied to it our traditional rule that while "we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but [that] are not supported with pertinent authority, are not considered on appeal." *LaRock*, 196 W.Va. at 302, 470 S.E.2d at 621. Our liberality also is tempered because the Petitioner's brief was prepared by counsel in this appeal. *See Murugan v. U.S. Att'y Gen.,* 10 F.4th 1185, 1195 n.6 (11th Cir. 2021) ("As an initial matter, Murugan is represented by counsel, and therefore is not entitled to liberal construction of his brief."); *United States v. Callahan*, 589 F. App'x 299, 300 (5th Cir. 2015) (per curiam) ("[B]ecause the brief was prepared by counsel, Callahan is not entitled to have it liberally construed.").

> If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.

The Petitioner contends that "the only evidence that [she] unlawfully or feloniously broke or entered into the Goins' home was the testimony of Jerry Goins Jr., who stated that he without any previous arrangement went next door and invited Petitioner and Mr. Laney over to his home." We take this as an assertion that as an invited guest in the Goins' home, the Petitioner could not have been convicted of burglary. This contention is without merit as it flies directly in the face of our holding that "[t]he statutory requirement of entry is . . . fulfilled when a person with consent to enter exceeds the scope of the consent granted." Syl. Pt. 1, in part, *State v. Plumley*, 181 W. Va. 685, 384 S.E.2d 130 (1989).

In this case, Jerry invited the Petitioner and Mr. Laney into the Goins' house to drink and play pool—not to steal. The jury could have found, based on the evidence, that the Petitioner had an intent to steal before entering the Goins' house given that: (1) the Petitioner knew before going with Jerry to the Goins' house that Jerry's parents were not at home, (2) Jerry had consumed quite a bit of alcohol before inviting the Petitioner and Mr. Laney to the Goins' house (from which the jury could have conclude that the Petitioner knew Jerry was less observant and responsive than he would otherwise be), (3) Ms. Goins had banished the Petitioner from the Goins' residence; and, (4) Ms. Goins believed that the Petitioner had been in the Goins' house more than once taking Ms. Goins' belongings. We find this evidence sufficient to satisfy the *Jackson/Guthrie* standard and, therefore, we affirm the jury's verdict finding the Petitioner guilty of Burglary.

*Grand Larceny*

West Virginia Code § 61-3-13(a) (1994) provides, "[i]f a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny[.]" The Petitioner challenges the evidence the State adduced to show the goods taken by the Petitioner from the Goins' house exceeded a value of $1000.[6]

---

[6]It appears that the Petitioner also may be claiming that the indictment's grand larceny count was defective because it did not sufficiently itemize the items she was accused of taking nor give each item a specific value thus violating her double jeopardy rights. We will not address any such argument as the Petitioner's failure to raise it before trial and failure to show good cause for not so doing has waived the issue on appeal. Syl. Pt. 2, *State v. Tommy Y., Jr.*, 219 W. Va. 530, 637 S.E.2d 628 (2006) ("For the purposes of Rule 12(b)(2) and Rule 12(f) of the West Virginia Rules of Criminal Procedure, if a defect

The Petitioner's challenge is without merit. We have held:

> The owner of stolen property may offer evidence of its value, at the time and place of the crime, based upon the property's fair market value. In addition to fair market value, other ways of showing the value of stolen property include the purchase price, replacement cost, or the owner's reasonable belief as to its value. The weight to be given the owner's testimony as to the value of the property is for the trier of fact to decide.

Syl. Pt. 3, *State v. Jerrome*, 233 W. Va. 372, 758 S.E.2d 576 (2014).

At trial, Ms. Goins, who had worked in retail twenty-years, testified the worth of her missing property was $17,000 and Trooper Shifflett testified that the alleged value from the victim was more than $1000. We find this evidence sufficient to satisfy the *Jackson/Guthrie* standard and, therefore, we affirm the jury's verdict finding the Petitioner guilty of Grand Larceny.

*Conspiracy*

Under West Virginia Code § 61-10-31 (1971), it is "unlawful for two or more persons to conspire (1) to commit any offense against the State . . . if . . . one or more of such persons does any act to effect the object of the conspiracy." Thus, "[p]ursuant to *W. Va. Code*, 61–10–31 (1971), a conspiracy occurs when two or more persons conspire or agree to commit an offense against the State of West Virginia and some overt act is taken by one or more of such persons in furtherance of the object of the conspiracy." *State v. Rogers*, 215 W. Va. 499, 502, 600 S.E.2d 211, 214 (2004) (per curiam). Consequently, "[i]n order for the State to prove a conspiracy under *W. Va. Code*, 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981).

Having reviewed the Petitioner's brief, we believe that he is claiming that the State failed to prove an agreement between the Petitioner and Mr. Laney to burglarize the Goins' residence. We disagree.

---

in a charging instrument does not involve jurisdiction or result in a failure to charge an offense, a defendant must raise the issue prior to trial or the defect will be deemed waived absent a showing of good cause for failing to timely raise the issue.").

6

An agreement to commit an offense "need not be shown to have been explicit[,]" *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975), or "to exist in any formal way." *Direct Sales Co. v. United States*, 131 F.2d 835, 836 (4th Cir. 1942), *aff'd*, 319 U.S. 703 (1943). "The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." *Less*, 170 W. Va. at 265, 294 S.E.2d at 67. For example, "'[n]o magic words, handshakes, winks, nods, spoken agreements, or acknowledgments are necessary.'" *Edwards v. State*, 349 So. 3d 1174, 1179 (Miss. Ct. App. 2022) (citation omitted). The State does not have to prove "the defendant and his coconspirators signed papers, shook hands, or uttered the words 'we have an agreement.'" *State v. Stellato*, 523 A.2d 1345, 1348 (Conn. Ct. App. 1987).

"'"[T]he State was not required to define the precise moment in time when Defendant entered into a conspiratorial agreement." *State v. Gallegos*, 254 P.3d 655, 660–61 (N.M. 2011). "'[T]he agreement necessary for participation in a conspiracy may be near-instant[.]'" *Lucas v. United States*, 20 A.3d 737, 744 (D.C. 2011) (citation omitted). "While a conspiracy involves a community of purpose, it may be formed in a flash or an instant without prearrangement. The conspiratorial agreement may arise on the spur of the moment." *Smith v. State*, 368 So. 2d 298, 304–05 (Ala. Ct. Crim. App. 1978) (internal citations omitted).

Finally, "[i]t is well established that presence, companionship and conduct before and after the offense are circumstances which may give rise to the existence of a conspiracy." *Turner v. State*, 566 S.E.2d 676, 679 (Ga. 2002); *see also People v. Atley,* 220 N.W.2d 465, 471 (Mich. 1974) ("It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact."), *overruled on other grounds by People v. Hardiman,* 646 N.W.2d 158 (Mich. 2002), *State v. Cole*, 448 P.2d 523, 528 (Or. 1968) ("Since the proof of the agreement to conspire is most frequently circumstantial, it is relevant to show the relationship of the conspirators, both before and after the conspiracy.").

In the present case, the evidence, taken in a light most favorable to the State, established that on November 26, 2015, Mr. Laney accompanied the Petitioner to the Goins' residence after being invited there by Jerry, who had been drinking heavily that day. Jerry told Mr. Laney and the Petitioner that Mr. and Ms. Goins were not home. While Mr. Laney played pool with Jerry (which the jury could have inferred was to distract Jerry from the Petitioner's absences from the poolroom), the Petitioner spirited away items from the Goins' house belonging to Ms. Goins. Shortly after Jerry caught the Petitioner going through Ms. Goins' bedroom closet, the Petitioner told Mr. Laney she was ready to go home, and they left—from which the jury could infer Mr. Laney and the Petitioner were acting in concert. Finally, the Petitioner subsequently sold some of the items that she had stolen from the Goins' residence to Ms. Riffe, who stated that Mr. Laney was not only with the Petitioner during the transactions, but that Mr. Laney and the Petitioner were using Mr.

Laney's car during the sale. We find this evidence sufficient to satisfy the *Jackson/Guthrie* standard and, therefore, we affirm the jury's verdict finding the Petitioner guilty of Conspiracy.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 3, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**CONCURRING, IN PART, AND DISSENTING, IN PART:**

Justice William R. Wooton

Wooton, Justice, concurring, in part, and dissenting, in part:

The majority finds that the State's evidence in this case was sufficient to prove beyond a reasonable doubt that petitioner Candice T. Salmons ("the petitioner") was guilty of burglary, grand larceny, and conspiracy to commit a felony. After careful review of the appendix record, including the transcript of the petitioner's two-day trial and all exhibits entered into evidence, I concur that the State's evidence was sufficient to prove grand larceny. In that regard, although the petitioner hotly contests both the number of items allegedly stolen from the home of the victim, Melissa Goins ("Mrs. Goins"),[7] and their value, the jury was entitled to credit the testimony of Mrs. Goins, the owner of the property, on both points. Further, I concur that the indictment was sufficient to give the petitioner fair notice of the substance of the grand larceny charge.

However, I vehemently dissent from the majority's finding that the evidence was sufficient to prove either burglary or conspiracy, as there was not a scintilla of evidence

---

[7] Although there was testimony at trial that some of Jerry Goins Sr.'s ("Mr. Goins Sr.") belongings were stolen, he was not named as a victim in the indictment.

admitted at trial to show that the petitioner entered the Goins home with intent to commit a larceny or that the petitioner conspired with anyone[8] to commit a burglary.

As a threshold matter, I find it necessary to address an issue the majority relegates to a brief footnote: the admission into evidence of the Criminal Complaint, a document filled with the out-of-court statements of victims, witnesses, and the petitioner. I cannot conceive of a circumstance in which the entirety of this Complaint would be admissible. Although parts of it might properly have been utilized to impeach the victims', witnesses', or the petitioner's trial testimony[9] or to refresh their recollections,[10] none of the victims or witnesses were impeached at trial with their respective prior statements and none needed to have their memories refreshed. Indeed, the investigating officer specifically testified that each individual's testimony at trial was consistent with his or her statements in the Criminal Complaint. Neither the petitioner nor her boyfriend, David Laney ("Mr. Laney"), testified at trial, and therefore as to them there was nothing to impeach or refresh.

Further, the State did not seek admission of the petitioner's statements contained in the Criminal Complaint – which as far as can be ascertained from the appendix record were not Mirandized[11] – as substantive evidence, which would have required a threshold inquiry into the circumstances under which the statements were made. *See, e.g.*, *State v. Clark*, 175 W. Va. 58, 63–64, 331 S.E.2d 496, 502 (1985) ("A criminal defendant's confessions or admissions have historically been admitted in evidence to prove the truth of the matters asserted therein as an exception to the hearsay rule, subject to an initial inquiry that the defendant's constitutional rights were not violated and the statements were freely and voluntarily made.") (footnotes omitted); Syl. Pt. 5, *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975) ("The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case."). In this case, the only thing we know about the petitioner's statement to police is that her interview, and that of Mr. Laney, "were captured on the undersigned officer's patrol vehicle dash camera." The State clearly failed to make any showing that the statements were voluntarily made or otherwise had any indicia of reliability.

---

[8] The indictment stated only that the petitioner "conspire[ed] with two or more persons to commit offenses against the State of West Virginia by conspiring to commit Burglary, and one member of the conspiracy, subsequent to the agreement had not terminated[.]"

[9] *See* W. Va. R. Evid. 613.

[10] *See id*. R. 612.

[11] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

9

Nonetheless, the fact remains that the Criminal Complaint, with several redactions made at the request of defense counsel, was admitted into evidence in its entirety without objection, and the issue of the document's admissibility has not been raised as an assignment of error on appeal. Thus, in reviewing the sufficiency of the evidence to sustain the charges of burglary and conspiracy, I will take into account any relevant statements in the trial testimony and in the Criminal Complaint.

The sole testimony at trial as to what happened on the evening of November 26, 2015, came from Jerry Goins Jr. ("Mr. Goins Jr."), whose testimony can most charitably be characterized as terse. Mr. Goins Jr. testified that "I was drinking home alone that night, and I had some company to come over to shoot some pool. So [the petitioner's] house was close. So I walked over there."[12] Thereafter, at the Goins home, "I was drinking and me and David was shooting pool and [the petitioner] was in and out. She said she had a stomach ache and was in the restroom and in my parents' closet," where she was "just looking through clothes." Eventually Mr. Goins Jr. drove the petitioner and her boyfriend home, and the following morning he "noticed cabinet doors being open. You know, little things like that."

In his statement contained in the Criminal Complaint, Mr. Goins Jr. was slightly more expansive:

> [O]n Thanksgiving he walked to [the petitioner's] residence to hang out with her and her family. He stated that when he got there they were talking and he told them that his parents weren't home and they could go to his house to shoot pool and drink. He stated that he, [the petitioner], and [Mr. Laney] went to his house and started drinking and shooting pool. Mr. Goins stated that while he and [Mr. Laney] were shooting pool [the petitioner] went through the house to use the bathroom a couple of times. He stated that each time she went to the bathroom it was for a long period of time. He stated that the second time she went to the bathroom, he noticed that it had been a long time and he went through the house looking for her. He stated that he found [the petitioner] in Mrs. Goins['] bedroom closet. Mr. Goins stated that shortly after that, [the petitioner] told Mr. Laney that she was ready to go home and they left.

---

[12] Although this recitation is not a model of clarity, Mr. Goins Jr. later clarified in his trial testimony that he had invited the petitioner and Mr. Laney to come to the Goins home.

Although neither the petitioner nor Mr. Laney testified at trial, their statements contained in the Criminal Complaint contradicted Mr. Goins Jr.'s account in several respects. Specifically, both noted that when Mr. Goins Jr. showed up at the petitioner's house on the evening in question, he was intoxicated and wasn't wearing any shoes; and both denied that the petitioner went anywhere in the house other than in the pool room, with the petitioner stating that she remained at the doorway of the pool room and Mr. Laney stating that she stayed outside the house near the front door.

The question is now squarely presented: was the State's evidence, the entirety of which is set forth above, sufficient to sustain either the charge of burglary or conspiracy to commit a crime? To this end, I will discuss the charges separately.

## Burglary

Pursuant to the relevant portion of West Virginia Code section 61-3-11(a) in effect at the time of the offenses charged, the crime of burglary is committed "[i]f any person shall, in the nighttime, break and enter, or enter without breaking . . . the dwelling house . . . of another, with intent to commit a felony or any larceny therein[.]"[13] The petitioner's primary argument on appeal is that because her entry into the Goins house was authorized – and the evidence is undisputed that it was, as Mr. Goins Jr. invited the petitioner and Mr. Laney to come home with him – her conviction of burglary cannot stand under this Court's holding in *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1982). In *Louk*, we determined that "[t]he crime of burglary is complete when the defendant makes an *unauthorized* entry into a structure if at the time of his entry into the building he entertains the actual intent to commit a specific crime therein, which may be theft by unauthorized taking." *Id*. at 28, 285 S.E.2d 435 (emphasis added and citation omitted). Although this issue may be of academic interest, *see State v. Wallace*, 205 W. Va. 155, 161 n.10, 517 S.E.2d 20, 26 n.10 (1999) (questioning the reasoning of *Louk* and stating that "[i]t is by no means clear that [the] nighttime burglary statute requires an unauthorized entry"), it is unnecessary for the Court to resolve it in this case because under the statute, regardless of whether the entry was authorized or not, what matters is the defendant's *intent* at the time of entry. *See* W. Va. Code § 61-3-11(a). In this regard, the State has failed to produce any evidence from which the petitioner's intent can be inferred, let alone proved beyond a reasonable doubt.

---

[13]The current version of West Virginia Code section 61-3-11(a) eliminates any distinction between nighttime and daytime burglary: "Any person who breaks and enters, or enters without breaking, a dwelling house or outbuilding adjoining a dwelling with the intent to commit a violation of the criminal laws of this state is guilty of a felony."

The majority rests its finding that the evidence was sufficient to prove intent beyond a reasonable doubt upon the following: that the petitioner knew Mr. Goins Jr. was drunk when he issued his invitation for her and Mr. Laney to come to the Goins home; that she knew Mr. Goins Sr. and Mrs. Goins were out of town; that Mrs. Goins had previously barred her from the Goins home because Mrs. Goins suspected she had stolen items from the home on an earlier occasion; and that she did in fact commit grand larceny while she was within the premises at Mr. Goins Jr.'s invitation. The majority's reasoning simply cannot stand.

First, the majority is using Mrs. Goins' testimony that she previously barred the petitioner from the home for a purpose expressly forbidden by law: "to prove [the petitioner's] character in order to show that on a particular occasion [she] acted in accordance with the character." *See* W. Va. R. Evid. 404(b)(1). In this regard, there was no showing at trial – and no one has even suggested on appeal – that evidence of the petitioner's alleged prior "crime, wrong, or other act" was admissible for another, limited, purpose. *See id*. R. 404(b)(2); *State v. McFarland*, 228 W. Va. 492, 495, 721 S.E.2d 62, 65 (2011) ("When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to *only that purpose*.") (emphasis added).

Second, with respect to the fact that the petitioner did, in fact, commit a larceny, it is obvious that the majority is engaging in classic *post hoc ergo propter hoc*[14] reasoning: the logical fallacy in assuming that one thing caused another because the first thing preceded the other. *See*, *e.g*., *Jordan v. Nat'l Grange Mut. Ins. Co*., 183 W. Va. 9, 14, 393 S.E.2d 647, 652 (1990), *modified on other grounds by Miller v. Fluharty*, 201 W. Va. 685, 500 S.E.2d 310 (1997) (where insured seeks legal fees in case involving insurer's failure to adequately investigate a claim, "the insured must show more than *post hoc, ergo propter hoc,* that is, the insured must show more than the fact that a settlement for all or substantially all of the claim was reached after the action was brought against the insurer. Instead, the insured must show that but for his or her attorney's services such settlement would not have been reached, in light of the undue delay in investigating the claim."). If the instant case involved breaking and entering it might be permissible to consider what happened inside the house as evidence of the petitioner's intent at the time of entry (one would be hard-pressed to imagine a benign explanation for a forcible entry into the property

---

[14] "After this, therefore because of this."

of another). However, the undisputed evidence in this case is that the petitioner entered the Goins home because she was invited to do so; accordingly, the fact that she later committed a larceny is insufficient to find that her intent at the time of entry was to commit larceny.

Thus, the so-called proof in this case boils down to the petitioner's knowledge that Mr. Goins Jr. was drunk and that his parents were out of town. In my view, this evidence is insufficient to raise even an inference of intent, let alone to prove intent beyond a reasonable doubt, even when viewed under the standard of review embraced by the majority which "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."[15]

### Conspiracy To Commit A Felony

West Virginia Code section 61-10-31 (2020) states, in relevant part, that "[i]t shall be unlawful for two or more persons to conspire (1) to commit any offense against the State . . . if . . . one or more of such persons does any act to effect the object of the conspiracy"[16] and that "[a]ny person who violates the provisions of this section by conspiring to commit an offense against the State which is a felony . . . shall be guilty of a felony[.]" Although the alleged coconspirator was not named in the indictment, the State's theory at trial and on appeal was that the petitioner conspired with her boyfriend, Mr. Laney, to burglarize the Goins home.

The problem with the State's theory, and with the majority's unquestioning adoption of it, is that there was not a scintilla of evidence in the record to support it. All we know from the evidence with respect to Mr. Laney is that he was at the petitioner's home when Mr. Goins Jr. showed up, unannounced and drunk; that the two accepted Mr. Goins Jr.'s invitation to come to his home; and that while in the house, Mr. Laney remained in the pool room until the petitioner announced that she was ready to go home, at which point the two left. None of this permits the drawing of an inference that Mr. Laney knew what the petitioner intended to do at the Goins home, let alone that he conspired with her to do it.[17]

---

[15] *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

[16] In Count Three of the indictment, which charged the petitioner with "Conspiracy To Commit A Felony," the State cited the burglary statute, West Virginia Code section 61-3-11, thus making it clear that the petitioner was more specifically being charged with conspiracy to commit burglary.

[17] The majority recites evidence to the effect that sometime after the events of November 26, 2015, Mr. Laney drove the petitioner to the home of an individual who had agreed to purchase some of the stolen goods. Assuming (as we must on post-trial review)

13

The bottom line here is that, as with the case of the burglary charge, the majority has adopted the State's theory as to the conspiracy charge despite the complete dearth of any evidence to support it.

For the reasons set forth, I respectfully concur, in part, and dissent, in part. I would affirm the petitioner's conviction for larceny, but reverse her convictions for burglary and conspiracy, and remand for resentencing.[18]

---

that the jury believed this evidence, it could reasonably have concluded that Mr. Laney was an accessory after the fact to the larceny, West Virginia Code section 61-11-6(a), which is a wholly separate offense from that of conspiracy to commit burglary.

[18] The petitioner is now serving concurrent sentences of one to ten years on the larceny conviction, one to fifteen years on the burglary conviction, and one to five years on the conspiracy conviction. Her effective date of sentence was April 21, 2021, with two days of credit for time served.